---

## STEARNS *v.* AGUIRRE *et al.*

A judgment "of reversal" in the Supreme Court is not necessarily a bar to further proceedings in the action.   The opinion rendered with the judgment is advisory to the Court below; and after the reversal of an erroneous judgment, the parties have the same rights which they had originally.

If a judgment is pronounced by a Court having jurisdiction, no matter how irregular it may be, it must stand until set aside or reversed on appeal; but when entered by a mere ministerial officer, without authority of law, it is void.

Where two defendants are jointly sued, and service had on both, the clerk of the Court has no authority to enter judgment by default against one, and his act in so doing is without color of law, and void, and may be disregarded or set aside.

But where the plaintiff established his right to recover against both defendants, judgment should be entered against them after setting aside the void entry of the clerk.

APPEAL from the District Court of the First Judicial District, County of Solano.

The appellant instituted his suit upon a joint and several note

of Aguirre and Arguello. Summons was issued to the county of San Diego, where it was served on Aguirre July 6, and on Arguello July 8, 1854. Arguello not answering, on the second of August, 1854, his default was entered, and on the following day, without the authority or direction of the Court, the clerk entered up what purported to be a final judgment against the said Arguello. Aguirre answered to the complaint, to which plaintiff demurred; and on the third of August, judgment was rendered in favor of plaintiff, and entered up as a several judgment against Aguirre, of the same date and substance, but from its recitals, apparently subsequent to the entry against Arguello. From this judgment Aguirre appealed, and at the January Term, 1855, this Court reversed the same, on the ground that the demurrer to Aguirre's answer was not well taken.

The cause having been remanded, was again tried in the Court below, and judgment again rendered for plaintiff. Aguirre again appealed, and at the April Term, 1856, the second judgment was reversed. The cause having been again remanded, the plaintiff moved that the judgment so entered by the clerk against Arguello be set aside and vacated; which motion having been granted, the cause was set for trial on August 6, 1856, and on August 7, on motion of the defendant Aguirre, the cause was continued. November 17th, Aguirre moved for final judgment in his favor; plaintiff resisted, and, on the twenty-fifth, moved that the cause be placed upon the calendar for trial; this motion the Court denied, and proceeded to enter final judgment for defendant. Motion for a new trial was overruled, and exceptions taken. From this last final judgment the plaintiff below now appeals, and assigns each of the orders and proceedings of the Court below, in refusing to hear the cause *de novo*, in granting the final judgment for defendant, and in denying the motion for new trial, as error.

*J. A. McDougall, and J. R. Scott*, for Appellant.

It will not be contended that the decision of this Court at the April Term, 1856, adjudged finally this cause between the parties. It ascertained error in the record, reverses the judgment, and remands the cause. If it had gone further, and directed the Court below what judgment to enter up, its determination might be regarded as final, but such is not the practice upon revision of causes at common law. The Appellate Court, upon the record before it, affirms or reverses. The opinion, if once rendered, is advisory to the Court below, and must be a guide to its further proceedings, but the opinion in the case does not change the law of the case or operate on the rights of the parties. The plaintiff, then, had a right, upon the cause being remanded, to have the same hearing as before the entry and reversal of the erroneous judgment, and the entire record now again comes up for the

purpose of determining the regularity of the proceedings subsequent to the return of the case to the Court below.

The first position assumed is, that the entry of judgment against Arguello by the clerk, without direction or order of the Court, was a proceeding without authority of law, and absolutely void.

There is a certain respect due to the judgment of a Court, whether erroneously rendered or irregularly entered. If erroneously rendered, and the matter ceased to be *in fieri*, it can only be corrected by the superior jurisdiction. If irregularly or erroneously entered, it may be corrected by the same Court, *nunc pro tunc*, if the entire record shows the misprision and furnishes a guide to the true judgment. It is insisted that there was here no judgment, but a mere unauthorized ministerial, and therefore void, act.

Arguello and Aguirre were jointly liable, they were jointly sued, both were served, and subject to the jurisdiction of the Court in the cause. Arguello made default, Aguirre answered; under these circumstances the clerk had no authority or power to enter judgment.

The following provisions of statute are all that confer authority upon the clerk to enter judgment:

Prac. Act, § 180—Provides for the entry of judgment on trial by the Court.

Ib., § 197—Provides for the entry of judgment on verdict.

Ib., § 376—Provides for the entry of judgment by confession. Here the clerk acts merely as clerk. The amount for which he is to enter judgment is fixed. Upon the papers filed, the law pronounces a judgment, which it is the duty of the clerk to enter.

Ib., § 385—Provides for the entry of judgments upon awards, and here, upon the papers filed, the law pronounces a judgment, which it is the duty of the clerk to enter.

Ib., § 187—Provides for the entry of judgment upon the award of a referee, and here again the clerk performs a mere ministerial duty, prescribed by law.

In this case no judgment had been rendered by the law, or by the Court; there was in fact no judgment, and the entry of the clerk could not make one. It can hardly be necessary to extend an argument upon the question, whether or not a clerk, who may act by deputy, and who is a mere ministerial officer of the law and the Court, can render a judgment.

That a judgment entered by a clerk, without authority of law, is a void act, is equally clear. All acts of ministerial officers unauthorized by law are void. For this doctrine, see Vose *v.* Dean, 7 Mass., 280.

This is not the case of an erroneous judgment, nor of a judgment erroneously entered, and therefore is not the subject of a

29

writ of error in the same, nor from an appellate Court; but the entry should be struck from the record as an unauthorized and void act.

It is contended that the term when the entry was made having passed, the matter no longer remained *in fieri*, and the power of the Court over the record had ceased.

The general rule as laid down by this Court, and the general rule of the common law is not questioned. We say that we are within the exception to the rule.

§ 68 Prac. Act—Provides for relieving a party against whom judgment is entered by mistake, surprise, or neglect. That is not precisely this case, but only a recognition of the principle. The rule as applicable directly, was laid down by this Court in Morrison, administrator, etc., *v.* Dapman & West, 3 Cal., 254, in which case it was held that a Court may at any time render or amend a judgment, *nunc pro tunc,* where the record discloses that the entry on the minutes does not correctly give what was the judgment of the Court. In Chichester *v.* Caude, 3 Cowen, 56, this doctrine is distinctly recognized, and Close *v.* Gillespie, 3 Johns., 526, is a still stronger case in point. In both of these cases, amendments were permitted at subsequent terms, *nunc pro tunc,* although the rights of third persons, creditors, were affected. The same power was exercised by the Supreme Court of New York, in the Mechanics' Bank *v.* Minthorne, 19 Johns., 245, where the Court say " we interfere in such a case to do that equity which the party would be entitled to on application to the Court of Chancery." In Lee *v.* Curtis, 17 John., 85, there was judgment for defendant in ejectment upon an issue of *non est factum.* The judgment was improperly entered, and would have been a bar; on motion of defendant it was amended by striking out the verdict and judgment, and entering in their stead a judgment of nonsuit. In Hunt *v.* Grant & Trowbridge, 19 Wend., 90, the same power is recognized.

In Atkins *v.* Sawyer, 1 Pickering, 353–4, pending a proceeding in equity, where the validity of a judgment was questioned, Wilde, J., says : " There can be no doubt, we think, that this is a defect in the defendant's title, which would be decisive if the judgment could not now be amended. But it is a well settled rule that any mistake arising from the misprision of the clerk may be amended, and set right by another part of the record. The mistake here is plainly of this description, and if the case depended on this exception, we should, on motion, allow the judgment to be amended."

It was clearly the right of the plaintiff, upon the judgment against Arguello being set aside, to have the issue presented by Aguirre tried; and if the issue were found for plaintiff, to have judgment entered up against both defendants. The Court below denied this right, pronounced a bar, and rendered judgment

final for defendant. The plaintiff, appealing to this Court, asks that this judgment be set aside and the Court below directed to proceed to a determination of the rights of both parties.

*Heydenfeldt and Brent* for Respondent.

1. This whole case was decided by the Supreme Court, in its last opinion, reversing the judgment.

The case never was remanded.

2. The cases cited by appellant are those where a ministerial officer made a mistake or omission, and the amendment was simply to supply the defect, or, in technical words, the misprision of the clerk. What is misprision of the clerk, and what can be amended? 1 Comyn Dig., Amendment, p. 581 (D. I.) (T.)

3. If the judgment against Arguello had vitality for one single moment of time, it destroyed the liability of the respondent forever, and the subsequent setting aside of the judgment cannot revive an extinguished obligation.

4. The Supreme Court of the State have frequently decided that after an adjournment, the District Court lost all control over their judgments. Baldwin *v.* Kramer, 2 Cal., 582; Suydam *v.* Poole, 4 ib., 280; Carpenter *v.* Hart, 5 ib., 406.

5. Equity would not grant relief from the judgment if appellant had filed his bill, much less can this relief be obtained by a mere order. 1 Pet. C. C. R., 301; Tenny *v.* Martin, 4 Johns. Ch. R., 569.

MURRAY, C. J., after stating the facts, delivered the opinion of the Court—BURNETT, J., concurring.

The first proposition that arises in this case, is whether the last opinion of this Court, reversing the cause, is a final bar to any further proceedings therein.

Under the statute of this State, the Supreme Court is authorized to affirm, reverse, modify, or render such judgment in the premises as it may deem proper. The general practice of the Court has been to "reverse," which is supposed to determine the whole merits of the controversy, or "reverse and remand the cause for further proceedings." The opinion of the Court thus filed is, in general, the basis of the judgment, which is entered by the clerk, under the direction of the Court.

There has never been any particular uniformity in the mode pursued by this Court in rendering its decisions or entering its judgments. For the most part, they follow the language of the opinion of the Judge who delivered it. In some cases, the language is, "The judgment is reversed;" in others, "Judgment reversed, and bill dismissed;" and in others, "Reversed, and final judgment for the plaintiff, or defendant," as the case may be. Applications have been frequently made to the Court, after the *remittitur* has gone out, to correct judgments in these particulars,

none of which have ever been denied when the Court could see, from the opinion and the record, that substantial justice was promoted thereby. If, in point of fact, this Court was absolutely bound by the inadvertence of its Judges, or the mistakes of its clerks in this particular, great injustice would result from it, from the fact that its decisions do not reach the parties, in many instances, until the *remittitur* goes out, and then it would be too late to correct the mistake.

We are now called on, for the first time, to determine whether a simple judgment of reversal is a bar to further proceedings in the same suit, and as the point has never before been adjudicated by this Court, and we have no rule of Court or of law which would control our judgment in the premises, we think it would be more just to follow the rule of the common law on this subject, by which the parties in this suit have in all probability been governed. At common law, the Appellate Court either affirms or reverses the judgment, upon the record before it. The opinion which is rendered is advisory to the inferior Court, and after the reversal of an erroneous judgment, the parties in the Court below have the same rights that they originally had.

Having determined that the former judgment of this Court is not necessarily a bar, we will proceed to examine our former opinion, for the purpose of ascertaining what was the point decided by the Court.

Perhaps the best mode of arriving at the point in issue, and intended to be decided, would be to quote the following passage from the opinion itself:

"The rule contended for, and established by the adjudications of the several Courts of the United States, that upon a joint and several obligation, a several judgment is no bar to a joint action against all the obligors, and *e converso* does not relieve this case, which is, whether several judgments may be taken in a joint action. In Illinois, it has been repeatedly held error to enter final judgment against a defaulting debtor, where a plea had been interposed, and the rule established, that the damages should be assessed against such defendants upon the final hearing of the case. See Russell et al. *v.* Hogan et al., 1 Scam., 552; 3 ib., 13; 4 ib., 360 and 338. This rule recommends itself to us as the safer practice, and as a proper exposition of the common law, in the absence of all statutory provisions on the subject."

It will be observed, from a careful examination of the whole opinion, that the real point in issue was whether, under the statute of this State, a several judgment in a joint action could be taken against one defendant, and it was held that such a judgment would be erroneous.

It was assumed by the Court, as the point was not made in the argument of the case, that the default and final judgment entered against Arguello was legal, or at worst only irregular. But as

Stearns *v.* Aguirre.

the question, whether that judgment was void or only irregular, was not necessary to the decision, which turned upon a point of practice, it remains to consider what the legal result of the judgment was, and how far it affected the rights of the parties now before the Court.

"A judgment is the decision or sentence of the law, given by a Court or competent tribunal, as the result of proceedings instituted therein for the redress of an injury." To be valid, it must be given by a competent Judge or Court, at a time and place appointed by law, and in the form it requires, and is usually entered up by the clerk, under the supervision of the Court. Our statute, like that of many States, has introduced a new rule, adapted to the convenience of the public, and pronounces a judgment of law upon a certain state of facts, which, when duly authenticated, authorize the clerk to enter judgment thereon. If a judgment is pronounced by a Court having jurisdiction, no matter how irregular it may be, it must stand until set aside or reversed on appeal; but when entered by a mere ministerial officer, without authority of law, it is wholly void.

It remains, then, to examine whether the judgment against Arguello was properly entered. Arguello and Aguirre were jointly liable; they were sued jointly, and both served with process; one answered, and the other made default; judgment was entered against the defaulting debtor, under the supposition, doubtless, that it was authorized by the one hundred and fiftieth section of the Practice Act. This section, however, only authorizes a judgment to be entered in the cases provided by the thirty-second section of the act, and that section limits the power of the clerk to cases where all of the defendants have not been served. Both defendants having been served in this case, it results that the clerk had no authority to enter the judgment; that his act was without color of law, and void. Being void, the Court below might disregard the entry, or set it aside, to say nothing of its power to correct or amend it, and having, in the proper exercise of its power, set aside the judgment and default, it should have rendered judgment for the plaintiff.

Judgment reversed, and cause remanded.