*John M. Waldron* and *T. T. Player*, for appellant.

*Patton & Urmy*, for appellee.

---

## SIEBER *v.* FRINK.

(*Supreme Court of Colorado, January 18, 1884—Appeal from the District Court of Custer County.*)

1. PRACTICE—ANSWER BEFORE DEFAULT. It is not error to permit an answer to be filed after the statutory period for answering has expired—no default having been entered. *Quere*, whether the Code (Sec. 78, Code of '83) renders it necessary in such case to obtain leave of the Court to file answer, in view of the holding that "the office of a default is to limit the time during which the defendant may file his answer?"

2. SAME—REFERENCE TO TAKE PROOF IN EQUITY CASES—TRIAL. In purely equitable cases, the trial must be to the Court, unless both parties consent to a trial by a jury. (Sec. 154, Code of '83.) Neither the Chapter on References nor any other provision of the Code operates to deprive the Court of the right, in such cases, to direct, upon its own motion, the taking and reporting of the evidence by a referee. The trial may be upon proofs thus taken, or upon testimony given in open Court.

3. JUDGMENT—MAY BE ENTERED OF RECORD IN VACATION. The pronouncing of judgment is a judicial act; the entry of record thereof is a ministerial duty. The judgment is complete when properly declared, though the mechanical act of recording the same has not been performed. It is not essential that this be done in term time.

4. PRACTICE IN SUPREME COURT—WHEN EVIDENCE TAKEN BEFORE

REFEREE. Where a cause is tried to the Court upon proofs taken by a referee or master, it is the duty of the Supreme Court to sift and weigh all the evidence, with a view to a just determination, uninfluenced by the proposition that the Court below had superior facilities to judge of the credibility of witnesses, and the judgment will be reversed if not supported by the weight of evidence.

5. WATER RIGHTS. If the construction of a ditch be prosecuted with reasonable diligence, the right to water therethrough relates back to the commencement thereof.

6. SAME. A failure to use water is competent evidence of an abandonment of the right thereto; and if continued for an unreasonable period it creates a presumption of an intention to abandon; but this presumption is not conclusive and may be overcome by other satisfactory proofs.

7. SAME. A change of the point of diversion on the same stream does not affect the priority acquired by the original appropriation, provided the quantity of water diverted remains the same, and no intervening appropriator is injured.

8. SAME. To acquire a right to water from the date of diversion one must, within a reasonable time, employ the same in the business for which it was taken.

HELM, J. There was no error in allowing the answer to be filed. No default had been entered after the statutory period for answering expired, and it is doubtful if leave of Court even was necessary, unless Sec. 75 of the Code may be construed as requiring such leave; for it is said that the office of a default is "to limit the time during which the defendant may file his answer;" and that "if plaintiff fail to take a default before trial it is a favor to the defendant." *Drake* v. *Davemick*, 45 Cal., 463 ; *Manville* v. *Parks*, decided present term.

Certainly when, as in this case, application is made, and leave granted upon terms, by order of Court, no default having been entered, there is no irregularity upon which we would reverse the judgment.

This is purely a chancery case; equitable questions only are presented, and equitable relief alone is demanded. The cause must be tried to the Court, unless both parties consent to a trial by jury; the Court, of course, possessing the right to submit certain issues of fact, had they existed, to a jury or referee. Sec. 14, p. 222, Sess. Laws, 1879; Sec. 154, Code of '83.

The Court in this action submitted no issue to the referee, and the referee assumed no judicial function; he determined no question and reported no finding; he only performed the ministerial duty of reducing the testimony to writing, and re-

turning the same to the chancellor, who then heard the argu-
ments of counsel, and tried the case upon the pleadings and
the evidence so reported. We think that such cases may be
tried upon proofs taken in this way, or upon oral testimony
given in open court. We do not understand the chapter on
references, or any other provision of the Code, as operating to
deprive the Court, under the statute above cited, of the power
in cases like this, to direct upon its own motion, the taking and
reporting of evidence in the manner adopted herein ; a power
which was so fully conceded, and so freely exercised before
that instrument became a law. The case of *Williams* v. *Ben-
ton*, 24 Cal., 424, is not analogous; the reference there was to
hear the evidence and decide the issue; the opinion considers
the compulsory power of the Court to authorize a *finding* and
*judgment* by the referee. Besides, when that opinion was writ-
ten, the California practice acts contained no such provisions
as section 14, above mentioned—a statute which has an im-
portant bearing upon this and several other questions con-
nected with the distinction between procedure at law and in
equity.

Counsel for plaintiffs in error express a desire to have this
Court review the case upon its merits, and "determine the
rights of the parties so that the proper decree may be made
below." And under the fourteenth and fifteenth assignments
of error the argument and answer discuss but one proposition,
viz : the validity of a judgment *entered* in vacation. The ques-
tion, therefore, which we shall consider under these assign-
ments, is whether a judgment regularly rendered by a Court
in the transaction of its judicial business, may be entered of
record in vacation.

In *Stearns* v. *Aguirre*, 7 Cal., 443, cited, the clerk attempted
to enter a judgment in vacation, when it was neither ren-
dered by a Court, nor pronounced by law. Such a judgment
is, of course, void; it is an attempt by a mere ministerial officer
to perform judicial duties. The case is not in point upon the
question above stated. The pronouncing of judgment is a
judicial act; the entry of record thereof is a ministerial duty.
The judgment is complete when properly declared, though
the mechanical act of recording the same has not been per-
formed. In jury trials our Code directs the clerk to discharge

this duty within a specified time after verdict; but if he fails or neglects to do so within the statutory period, the judgment itself being pronounced on the verdict, is none the less valid, and may still be recorded. The Code does not require the entry to be made in term time. And in no event does the provision limiting the time apply to trials by the Court. The practice of entering judgments in vacation prevailed at common law. Freeman on Judgments (3d Ed.) Sec. 38, *et seq.* See also Sec. 144 of our Code of Procedure.

The remaining assignments of error question the sufficiency of the evidence to support the decree. Upon the principles of law governing the rights of the parties, counsel for both sides are in perfect harmony; a circumstance which is especially gratifying, as the Court has no fault to find with the legal doctrines thus agreed upon. The case was tried in the District Court, mainly upon proofs taken and reported by a master or referee; it is therefore our duty to "sift and weigh all the evidence with a view to a just determination, uninfluenced by the proposition that the Court below had superior facilities to judge of the credibility of witnesses." *Miller et al.* v. *Taylor et al.*, 6 Colo., 45.

The record contains over seven hundred and fifty folios of evidence, and we cannot analyze the same in this opinion. We shall content ourselves with a statement of the material conclusions of fact to be drawn therefrom.

Plaintiffs aver priority of right to the water in controversy through what is known as the "Wilson & Brown Ditch;" defendants base their claim thereto upon alleged appropriations thereof by means of the "Old or Becker," and the "Edward P. Smith ditches." A fourth, called the "School Section ditch," is described in the testimony, and will command our attention. The Wilson and Brown ditch was constructed for the purpose of irrigating two tracts of land owned by Wilson and Brown respectively. Plaintiff Wheeler is the grantee of Wilson, and plaintiffs Sieber and Hudson, hold title under a conveyance from Brown.

The priority of appropriation through the ·Becker ditch proper is practically conceded, though a suggestion of abandonment is made; it is probably the oldest connecting with Antelope creek. We do not understand that plaintiffs com-

plain of this appropriation of water; their contention is that defendants cannot use this priority to sustain their right to water through the School Section ditch.

We think plaintiffs are right in this respect. The head of the former is on Antelope creek; that of the latter is on Cottonwood, a tributary of Antelope, both being above the point of confluence of the two streams; the latter was constructed in 1875, yet water was diverted from Antelope creek through the former as late as 1878; from the evidence and maps we conclude that the former extends in a westerly, and the latter in a northerly direction; they meet and unite, and the water from both may be used in irrigating the same tract of land. But there are two separate and distinct diversions and appropriations of water, dating at different periods; and the rights acquired attach upon the respective dates of appropriation.

There is some conflict of testimony as to the time of appropriation through the Wilson and Brown ditch; we are satisfied that the ditch was commenced as early as April or May, 1871, and that it was completed and water turned in by or before the first of August. The appropriation would, therefore, date from April or May of that year. We accept the rule adopted in California and Nevada in this connection. This rule is stated as follows: "Although the appropriation is not deemed complete until the actual diversion or use of the water, still if such work be prosecuted with reasonable diligence, the right relates to the time when the first step was taken to secure it." (*Ophir M. Co.* v. *Carpenter*, 4 Nev., 544; *Kelly* v. *Natoma W. Co.*, 6 Cal., 109.) Water was not appropriated through the Smith ditch until July or August of 1871.

If, therefore, there has been no abandonment of the right acquired by means of the Wilson and Brown ditch, the prior right of plaintiffs over the appropriations through the school section and Smith ditches is established.

Upon the question of abandonment, the testimony is by no means clear. From 1871 to 1875, according to the proofs, each of the three ditches constructed in 1870 and 1871 were neglected, and probably used but little during one or more of the seasons; but we cannot say that the evidence sufficiently establishes an intention to abandon either of them, or the right to water acquired thereby.

A failure to use for a time, is competent evidence on the question of abandonment; and if such non-user be continued for an unreasonable period, it may fairly create a presumption of intention to abandon; but this presumption is not conclusive, and may be overcome by other satisfactory proofs.

The removal in 1876 of the head of plaintiffs' ditch and change of the point of diversion some eighty feet, does not affect their right of priority; both points of appropriation were upon the same stream; no change was made in the quantity of water diverted, and no one was injured by the removal; the use and the points of application to such use remained the same.

But it appears from the evidence of Wilson himself, that prior to 1876, no part of the water appropriated through the Wilson and Brown ditch, was used upon any portion of the Wilson tract. Of the quantity applied to the irrigation of the Brown ranch we are not satisfactorily advised. There is some proof that water "ran to waste" at the end of the ditch; and it may be that in 1871 and during the succeeding four years, but a part of the water diverted was actually applied to a beneficial use upon the Brown land. If this be the fact, plaintiffs are only entitled to priority for the quantity so used.

One of the essential elements of a valid appropriation of water is the application thereof to some useful industry. To acquire a right to water from the date of the diversion thereof, one must, within a reasonable time, employ the same in the business for which the appropriation is made. What shall constitute such reasonable time is a question of fact depending upon the circumstances connected with each particular case.

Plaintiffs Sieber and Hudson, are entitled to a decree of priority, and an injunction protecting the same, for so much of the water appropriated through the Wilson and Brown ditch as was used previous to 1876, in irrigating portions of the Brown ranch, of which they are the purchasers. But to determine this quantity, further proofs must be taken.

It appears that in the summer of 1876 the appropriation of water from the Cottonwood by the School Section ditch was enlarged. Such increase is subject to the right of plaintiff Wheeler, as well as Sieber and Hudson, acquired in the early

spring of that year by the reconstruction of their ditch and diversion there through. But we have no definite means of determining this quantity from the record; further testimony upon this point is also essential.

The decree will be reversed and the cause remanded, with directions to the District Court to take the necessary proofs upon the two questions above mentioned, and enter a decree in accordance with the views herein expressed.

The costs of the entire litigation will be equally divided between the plaintiffs and defendants.

*Reversed and remanded.*

*Blackburn & Dale,* for appellants.

*A. J. Rising,* for appellee.