# THE OPHIR SILVER MINING COMPANY, Appellant, *v.* C. CARPENTER *et als.*, Respondents.

Water Rights—Priority of Appropriation. Where the right of the use of running water is based upon appropriation and·not upon ownership in the soil, priority of appropriation gives the superior right.

Reasonable Time to Complete Appropriation. In the appropriation of running water for the purpose of acquiring a right thereto, if any work is necessary to be done to complete the appropriation, the law gives a reasonable time within which to do such work and protects the rights during such time by relation to the time when the first step was taken.

Appropriation of Water when Diligence not Exercised. Where the work necessary to complete an appropriation of running water is not prosecuted with diligence, the right to the use of the water does not relate back to the time when the first step was taken to secure it; but dates from the time when the work is completed or the appropriation is fully perfected.

Conflicting Water Claims. Where Rose, in 1858, designed a large ditch to carry a certain quantity of water from Carson River, a distance of over four miles to Dayton, and constructed a sufficiently large head, but after proceeding less than half a mile reduced its size so that a small proportion only of the quantity of water originally intended passed through it, and it was not enlarged to its originally intended dimensions until after 1862; and in 1859 the Ophir Silver Mining Company constructed a ditch tapping the river below the head of the Rose ditch, and on the enlargement of the Rose ditch the Ophir's ditch was deprived of its supply: *Held,* that Rose had not prosecuted the work on his ditch as originally intended with reasonable diligence, and that he therefore was only entitled to the quantity of water which ran through his ditch in 1859 when the Ophir ditch was constructed.

Diligence in Prosecuting Work of Appropriation. Diligence in the prosecution of work, such as the appropriation of running water by constructing a ditch for its use, does not require unusual or extraordinary efforts, but only such constancy or steadiness of purpose or labor as is usual with men engaged in like enterprises, who desire a speedy accomplishment of their designs; such assiduity in its prosecution as will manifest a *bona fide* intention to complete it within a reasonable time.

Excuses for Delay in Prosecuting Work of Appropriation. In the consideration whether reasonable diligence has been exercised in the construction of a ditch necessary to the appropriation of water, requiring the outlay of much capital and the labor of many men, the illness of the appropriator and his want of pecuniary means to prosecute the work, being matters incident to the person and not to the enterprise, are not such circumstances as will excuse great delay in the work.

Setting Aside Verdict for want of Evidence. The verdict of a jury should not be vacated by an appellate court on the ground of insufficiency of evidence if there is any evidence to support it; but if there be no substantial evidence upon the side of the verdict, it is the undoubted duty of the appellate court to set it aside.

Due Diligence as a Question of Law.  Due diligence is sufficiently clearly de-
    fined to enable courts to determine whether any given state of facts is sufficient
    to constitute it or not.
Practice—Injunctions Ancillary to Controverted Legal Rights.   When an
    injunction is asked in an action as merely ancillary to what is claimed to be a
    legal right, the parties have a right to have the legal issues determined by a
    jury before a final injunction can properly issue.

Appeal from the District Court of the First Judicial District,
Storey County.

This was an action against C. Carpenter, F. Birdsall, and P. H.
Clayton, the nature and facts of which are stated in the opinion.

*C. J. Hillyer*, for Appellant.

I.

The doctrine of the Courts of California in relation to water rights
has been sanctioned by this Court.    (*Lobdell* v. *Simpson & Hall*,
2 Nev. 277.)

The following principles have been settled:

*First*—Water rights have been secured by prior appropriation.

*Second*—Appropriation consists in taking *actual possession*.    It
cannot be constructive or rest in intention.   (6 Cal. 108 ; 7 Cal.
262 ; 12 Cal. 49.)    The diversion must be made for the purpose of
application to some beneficial purpose and must be so applied, other-
wise it is no appropriation.   (7 Cal. 262 ; 15 Cal. 275 ; 32 Cal.
26.)    The only qualification of the rule that actual possession con-
stitutes and measures appropriation to these rights is the doctrine
of relation.   (3. Cal. 413.)

As applied to water rights the rule may be stated thus :    Where
a series of acts is necessary to complete an appropriation of a water
privilege, and the party properly manifests the character and extent
of the privilege which he designs to secure and commences the per-
formance of the acts and diligently pursues the work until they are
completed and possession actually taken, the last act by relation se-
cures the privilege to the extent of the original design as against
all persons claiming subsequently to the commencement of the first
act.

Two important conditions are to be observed :

*First*—There must be a distinct and definite manifestation of the extent and character of the privilege to be secured. (*Kimball* v. *Gearhart*, 12 Cal. 27.)

*Second*—The work must be diligently pursued. (6 Cal. 558; 7 Cal. 262; 12 Cal. 27.)

The doctrine of relation applies equally and under precisely the same conditions to the enlargement of an old ditch and the construction of a new one. An enlargement is nothing else than a new and distinct appropriation. A party desirous of constructing a ditch must, in order to prevent others from acquiring superior rights pending its construction, first give proper notice of what he claims and intends to secure, and then diligently proceed by the proper works to reduce the same to possession. So one having a ditch and desirous of enlarging must in like manner, to prevent the intermediate acquisition of superior rights, give due notice of the extent of the additional appropriation contemplated and diligently proceed with the work necessary to actual enjoyment. Intention must be inferred from acts and from acts alone. (8 Cal. 444; 6 Cal. 108.)

Where intention as to the proposed capacity of a ditch is not manifested by positive notice, but is left to be inferred from the character of the work of construction, then the inference must be made, not from observation of any particular point, but from a consideration of its general size throughout its entire length, and from the general plan of work and character of construction. (8 Cal. 444.)

A present intention at some future time to enlarge a ditch is just as unavailing as a present intention at some future time to locate and construct a new ditch. There must not only be the intention, but the commencement to perform the series of acts necessary to accomplish the result, in order to invoke the doctrine of relation.

## II.

Whatever intention may have existed in reference to the enlarging or reconstructing, and however it may have been manifested, there was an entire failure of that " due diligence " in the execution necessary to the doctrine of relation.

The term "due diligence" is a legal term, and has a distinct legal signification. It means the doing of an act or series of acts with all practicable expedition. It admits of no delay whatever, except such as is incidental to the character of the act, or rendered practically unavoidable by accidental circumstances. Any other definition will deprive it of all significance. If it means less than this, it means nothing. Unless it requires the immediate and continued use of the usual and ordinary means for accomplishing the result, it is no more than a paraphrase for the proposition that the actor is to take as much time as suits his convenience.

## III.

The Court below held that the question of due diligence was one exclusively for the jury; that it was so peculiarly a question of fact, depending on a large number of circumstances, that a verdict upon the point under proper instructions could not be reviewed. That, however, it is in some degree a legal question is admitted when the Court undertakes to give instructions respecting it. Is it possible that a Court can give instructions, and yet be powerless to take care that they are observed?

1st. We claim that the question of "due diligence," when the facts are ascertained, is one of law for the Court, and not for the jury. Like most other legal terms, such as "payment," "possession," "ordinary care," it involves propositions both of law and of fact. As in other cases, the law is for the Court and the fact for the jury. While it is the province of the jury to ascertain what facts exist, it is the exclusive duty of the Court to determine whether these facts meet the legal requirements of the term. (2 Blackford, 351; 6 Id. 537; 7 Id. 283, 532; 1 Peters, 582; 1 Towne, 167; 6 East. 3–16; 12 Id. 433; 3 Hill, 520; 21 Wendell, 644; 11 Johns. 187; 6 Metcalf, 295; 3 Littell (Ky.) 500; 31 Cal. 221; 23 Id. 655.)

2d. This is an equity case, and, under the rules of equity jurisprudence, a verdict of a jury on a question of fact has no such sanctity as in a Court of common law. It will be freely reviewed upon the weight of evidence. (2 Daniels' Ch. Pr. 1307; 5 Cal. 448; 7 Cal. 426; 9 Cal. 360; 13 Cal. 85.)

Although in *Duff* v. *Fischer*, (15 Cal. 375) the Supreme Court of California decided that a verdict upon a chancery issue could only be reviewed on motion for new trial, yet they have nowhere intimated that it may not be set aside when clearly opposed to the weight of conflicting evidence.

3d.    The illness and want of pecuniary means on the part of Rose to prosecute his work are not the kind of excuses to which the law allows any effect.    They must pertain to the character and condition of the act itself, and not to the *personal* ability of the party. Sickness and poverty are in their nature private, and not things of which third persons can or ought to take cognizance.

*Aldrich and De Long,* for Respondents.

I.

Rose prosecuted his work of appropriation with sufficient diligence; and that he did not complete this ditch all the way as large as at its head is sufficiently accounted for and excused by—firstly, his want of pecuniary means; secondly, his desire to get some water through to commence selling to raise a revenue to complete the ditch; thirdly, as a matter of business and economy it was improper so to do, for the reason that by running some water through a small ditch and saturating the adjoining earth it was easier and cheaper to dig it to its full size after saturation than to attempt so to do in the first instance, and when the earth was dry and hard; and fourthly, for the reason that as the canal had to be constructed much of the way over a porous shale formation, it was useless in the first instance to construct it of its full size, because the water by seepage escaped so rapidly that if the ditch was constructed in the first instance of uniform size, it could not be made to carry any water at all throughout its entire length until after a long time; whereas, by constructing it of full size at its head, and for a distance where it had to be built in rock, or firm earth, it would force into the sandy soil such a volume that a small ditch would not lose so much by seepage but that some portion of the water would pass through the entire ditch.

II.

Where a ditch three or four miles in length is constructed, seven

feet wide on top, and three feet deep for a quarter of a mile, continuously from its head down, where the digging is hard and expensive, and is of irregular size below, and bears evidence of its incompleteness for the distance below that fourth of a mile, and work is being done upon it, and there appears to be no reason or use for building it that large for such a distance at its head, unless with a view to construct it eventually of the same size all the way ; that in such a case the finished portion for the one-fourth of a mile where no work is being done, and not the unfinished portion below, is what any reasonable man would look to, to learn the intention of the projector.

### III.

Due diligence in reducing a claim of water to possession and ownership is a question dependent on the facts and circumstances shown to exist in each case. The character of the country through which a ditch is to be dug, the climate, etc., will be considered in determining this question. If this be true how can such a question be one of law ? for if so, it could not be made to vary to suit the varying circumstance of each particular case.

What is a reasonable time must depend upon the circumstances of the case. (*Parke* v. *Kilham*, 8 Cal. 77 ; *Weaver et al.* v. *The Eureka Co.*, 15 Cal. ; *Lockhart* v. *Ogden*, 30 Cal. 574 ; *Kimball* v. *Gearhart*, 12 Cal. 30 ; *White* v. *Todd's Valley W. Co.*, 8 Cal. 444.)

The law of water rights and claims on this coast is peculiar to our land, its people, and their necessities. Property of this kind is of immense value. The means to be employed to reduce it to use are almost as varied as such claims are numerous. In some instances canals and ditches have to be constructed dozens of miles in length, crossing mountains and cañons, and skirting precipices, whereas in other cases the distance to conduct the water is short and easy. When circumstances are so widely variant, nothing could be more equitable than the rule that a person claiming a water right shall have a reasonable length of time in which to perfect his claim thereto, by building the necessary dams, ditches, etc., and the recognition of this principle in connection with the varying circumstances of every case, renders it impossible for any Court to

establish any suitable uniform rule in regard to what length of time parties claiming such right shall be allowed to complete their labors. The question should therefore be determined by a jury as practical men on the evidence in each case.

## IV.

Counsel for the plaintiff concede the truth of all the testimony for defendants whenever there is any conflict. Accepting this admission the judgment of the Court below is fully and fairly sustained by the evidence; and if the judgment is right, no matter what minor errors occurred during the trial, the judgment should be affirmed. (*Goode* v. *Smith and Wife*, 13 Cal. 84.)

## V.

It is insisted that this is an equity case, and therefore that the verdict was merely advisory to the Court; and that the Court will fully review it upon the testimony. It is true that the application is an equitable proceeding, but it is equally true that the action for the recovery of the water right and for the damages for diversion was an action at law, and most unquestionably the verdict is as conclusive in regard to those matters, as it would be if the whole action had been at law.

This was a mere action on the case for damages, with a bill in equity ancillary thereto, and the proceedings to try the right to property before a permanent injunction could be attained was proper. (15 Cal. 118; 14 Cal. 547–8.) And as there can be no doubt that it was a mere action at law, the authorities are uniform in negativing the right of the appellate Court to consider the question as to whether the verdict was sustained by the weight of evidence or not.

*Thomas H. Williams*, for Appellants, in reply, after discussing the facts, contended:

1st. If this be a suit in equity, as claimed by us, the Court is at liberty, without regard to the verdict, to determine whether due diligence was used by the other side in converting a ditch capable of carrying about five sluice-heads of water into a canal large

enough to float a small steamer. The Judges of this Court, from their experience, are more competent to pass upon the question than the jury.

2d. The Court below erred in refusing our instructions, which were framed upon a hypothesis which suited the facts, as claimed to have been established by the evidence. We asked the Court to instruct the jury that a failure for one year to enlarge Rose's ditch was not the exercise of due diligence; then we put it at two and three years, and each instruction was refused. We say that the result of the hypothetical facts contained in our instructions was a pure question of law for the Courts to decide.

Suppose, for example, that counsel for the other side had admitted their failure to do any work on their ditch for an entire year, (or for seventeen months, as appears by the evidence) having no excuse for the delay, would it not have been the duty of the Court to have then determined as a question of law whether they had prosecuted the work of the pretended enlargement with due diligence ?

The Court below told the jury that if Rose had diverted from the river, by dam or ditch, the quantity of water now used by defendants, they must find for the defendants; in other words, that if by the curved dam he turned the whole water of the river from its natural bed, they must find for the defendants without any reference to the question of the object or purpose of the diversion, and without regard to the question of whether the water diverted was to be applied to any beneficial use. The instruction would have been as sound and not less mischievous if it had charged " that one diverting water from the natural bed of a stream for a short distance acquires the exclusive right to divert it for all time to come, and to change the point of discharge at pleasure, even though he may never apply the water to any useful purpose."

By the Court, LEWIS, C. J.

This action is founded upon an alleged unlawful diversion of water, whereby it is claimed the plaintiff was damaged in the sum of three thousand dollars, for which judgment is asked against the defendants. An injunction is also prayed for to restrain any future diversion.

The defendants claim the right to divert the full quantity of water taken by them, by reason of an appropriation prior in point of time to any claim or appropriation by the plaintiff. And thus this controversy may be determined upon its merits by the resolution of the question which of the parties made the first appropriation of the water diverted by the defendants.

We have carefully examined the voluminous record in the case for the purpose of determining this main question, and as our conclusions are in favor of the plaintiff, the consideration of any minor questions is rendered unnecessary.

We concede for the purposes of the present discussion (although it is a fact by no means beyond doubt) that the grantors of the defendants made claim to and intended to appropriate the full volume of water now claimed by them long prior to the time when the plaintiff's grantors appropriated what is claimed by it, and place our decision entirely upon the failure on the part of those from whom defendants derive their title to prosecute their claim to consummation with that diligence which is necessary when it is attempted to make the final act of appropriation relate to the time when the first step was taken or the first act done to make it. We propose to rely solely upon the undisputed facts and uncontradicted evidence to support the conclusion at which we have arrived, the substance of which may be thus stated:

In the spring of the year 1858, J. H. Rose, the grantor of defendants, desiring to convey water to the village of Dayton, from the Carson River, constructed for that purpose a ditch, about four and a half miles in length, and of dimensions varying at different points. At its immediate head it was sixteen feet wide. For a distance of one-fourth of a mile below it averaged seven and one-half feet wide on top, and two and one-half feet deep. Its general size below that point was three and one-half feet wide at the top, two and one-half feet on the bottom, and two and one-half feet deep. The ditch was thus constructed in the year 1858. In the following year water was run through it to Dayton. And it remained pretty much in this condition until the fall of the year 1862, at which time Rose entered into a contract with Shanklin and McConnell for its enlargement to its present capacity. Work was immedi-

ately commenced under that contract, and the present ditch completed early in 1865.   Under this contract an entirely new survey was made, and the water was taken from the river at a point one-quarter of a mile above the head of the old ditch, and on the opposite side of the river.   The size of this new ditch, which is called the Shanklin and McConnell ditch, is thirteen feet in width at the top, nine feet on the bottom, and four feet deep.   Its flumes are six feet by three, with a fall of one-fifth of an inch to the rod.   The volume of water which can be run through it is ten times greater than could have been run through the old Rose ditch—its capacity being fifty-seven cubic feet per second, while the old ditch was capable of discharging only about four and a half feet.

The grantors of the plaintiff made no claim to any water until the month of July, A. D. 1859.   In that year they diverted the water from the river at a point some distance below the head of the Rose ditch, used some quantity of it that year, and in the fall of 1860 completed their ditch to its present capacity; and have ever since used the water thus diverted for motive power.

The defendants claim that the ditch as constructed or enlarged by Shanklin and McConnell is in accordance with the original design of Rose, from whom they acquire their right; that such design was manifested by the fact that his first ditch was of as great capacity for a quarter of a mile from its head as the present ditch, and hence that their right to the entire volume of water which the present ditch will carry must relate to the time when Rose did the first act towards appropriating it, which was in the spring of the year 1858.

The plaintiff concedes that the defendants, as the first appropriators, have the right, first, to divert through their ditch so much of the water of the river as would have run through the old ditch.   It is then claimed that the plaintiff is entitled to sufficient water to fill its ditch, counsel arguing on its behalf that the grantors of defendants had no right to increase the capacity of the old ditch to its prejudice.   Where the right to the use of running water is based upon appropriation, and not upon an ownership in the soil, it is the generally recognized rule here that priority of appropriation gives the superior right.   When any work is necessary to be done to

complete the appropriation, the law gives the claimant a reasonable time within which to do it, and although the appropriation is not deemed complete until the actual diversion or use of the water, still if such work be prosecuted with reasonable diligence, the right relates to the time when the first step was taken to secure it. If, however, the work be not prosecuted with diligence, the right does not so relate, but generally dates from the time when the work is completed or the appropriation is fully perfected.

As we have already stated, we concede the fact, for the present, that Rose designed, when he constructed his ditch in the year 1858, to enlarge it to the capacity of the present ditch, and if he has shown that the design thus conceived was prosecuted with a reasonable degree of diligence until its completion, then the defendants' right to that quantity of water now claimed by them will relate back to the spring of 1858, and thus ante-date the plaintiff's right eighteen months or two years, thereby giving them the superior right. But in our opinion the evidence shows an utter failure on the part of Rose to prosecute his original design with that diligence which the law requires. The manner in which this work was prosecuted we gather from the testimony of Rose himself. In the year 1858 the ditch was constructed, and a great deal of work was necessarily done. In the succeeding year also a considerable amount of work was done in cleaning out the ditch and enlarging it in some places. Some time in the summer of this year the ditch was completed to such an extent that a small quantity of water was run through it to Dayton. It is very doubtful whether any work was done this year towards a systematic enlargement of the ditch for the purpose of increasing its general capacity. Rose himself thus describes the work done : " I was trying to get more water through ; so wherever earth or rock slid in from the sides of the ditch, all the men hired by the day were instructed to dig or throw it out, and to throw out all the loose dirt or gravel that was not worked out by the water running through." However this may be, it is certain that in the succeeding year, that is in 1860, nothing whatever was done towards enlargement. Indeed the only thing done during the entire year was the employment of two men, who were engaged for a few days in throwing out rock from the ditch. This is all the work that

was done between the fall of 1859 and the month of May, A. D. 1861, a period of more than eighteen months. As counsel for appellant very aptly remarked, " Rose during this time gave to other pursuits his time and industry, and to the vast enterprise of securing all the waters of the Carson River, only a diligent contemplation." The year 1861 is little less barren of results. A few men were employed for a period of three months only, who, Rose says, were engaged in cleaning out and enlarging the ditch. From the fall of 1861 to the summer of 1862 nothing appears to have been done. In the summer from three to twenty men were employed, and continued work for about five months. But it is not pretended that they were employed at enlarging, but only cleaning out the ditch. Rose testifies that he did not know that it was enlarged at all that year; that the heavy rains during the winter had filled it up in many places; that he had it all cleaned out. In September of this year the contract between Rose and Shanklin and McConnell was entered into, and during the years 1863 and 1864 the work progressed, and the present ditch of the defendants was completed. Thus, it appears, that from the fall of 1859 to the summer of 1862, a period of over two years and a half, work was done upon the ditch for about three months only; that was during the year 1861, when Rose testifies that from seventeen to twenty men were employed. During this period of inactivity on the part of Rose, the grantors of the plaintiff prosecuted their work vigorously, and finished their ditch to its present capacity in the year 1860. These facts, it is argued on behalf of defendants, show such diligence on the part of their grantor in the prosecution of his original design as to make their right to the quantity of water now diverted by them relate to the time when Rose in the year 1858 did the first act towards appropriation. We are constrained to differ from counsel upon this proposition.

In our judgment those facts exhibit an utter want of diligence in the prosecution of the design which it is claimed was undertaken by Rose. If the labor of twenty men for three or four months, in a period of two years and a half, constitutes diligence in the prosecution of such a vast enterprise as this, it is difficult, if not impossible, to designate the entire want of diligence. The manner in which

this work was prosecuted certainly does not accord with what is generally understood to be reasonable diligence. Diligence is defined to be the " steady application to business of any kind, constant effort to accomplish any undertaking." The law does not require any unusual or extraordinary efforts, but only that which is usual, ordinary, and reasonable. The diligence required in cases of this kind is that constancy or steadiness of purpose or labor which is usual with men engaged in like enterprises, and who desire a speedy accomplishment of their designs. Such assiduity in the prosecution of the enterprise as will manifest to the world a *bona fide* intention to complete it within a reasonable time. It is the doing of an act, or series of acts, with all practical expedition, with no delay, except such as may be incident to the work itself. The law, then, required the grantors of the defendants to prosecute the work necessary to an execution of the design with all practical expedition.

But the evidence clearly shows that this was not done. The ditch was of the same general size, and the flumes of the same capacity, at the time when Shanklin and McConnell commenced work, as they were in the spring of 1859.

As no great effort is made necessary, so no unreasonable dilatoriness or delay is tolerated. But it is unnecessary for us to determine what would be deemed reasonable diligence on the part of the grantors of the defendants in this case ; it is enough to say that the doing of five or six days' work during a period of sixteen months, that is from the fall of 1859 to the month of May, 1861, and only three months' labor during a period of two years and a half, does not exhibit that diligence which the law requires. The weather would not have prevented work upon this ditch ordinarily more than three or four months in the year, hence labor upon it could probably have been prosecuted during eight or nine months out of every twelve. Here, however, there was a period of thirty months, when only about three months' work was done, or one month out of every ten. Rose during this time may have dreamed of his canal completed, seen it with his mind's eye yielding him a great revenue; he may have indulged the hope of providential interposition in his favor ; but this cannot be called a diligent

prosecution of his enterprise.   Surely he could hardly have expected to complete it during his natural life by such efforts as were made through this period.

It is, however, claimed on behalf of the defendants that all the work was done at this time which under the circumstances could be done, and that the law requires no more.   Rose's illness for a short time early in the year 1860 ; his want of means, and considerations of economy, are suggested as circumstances to be considered in determining whether the enterprise was prosecuted with reasonable diligence.   Rose testifies that in the spring of the year 1860 he was sick.   But it is not shown that that should necessarily interfere with the prosecution of the work.   For aught that appears in the record it could have proceeded notwithstanding his illness.   If it were admitted, however, that his illness constituted a valid excuse for a want of diligence, it would only excuse it whilst such illness continued, which was only for a short time in the early part of 1860.   But we are inclined to believe that his illness is not a circumstance which can be taken into consideration at all.   Like the pecuniary condition of a person, it is not one of those matters incident to the enterprise, but rather to the person.   The only matters in cases of this kind which can be taken into consideration are such as would affect any person who might be engaged in the same undertaking, such as the state of the weather, the difficulty of obtaining laborers, or something of that character.   It would be a most dangerous doctrine to hold that the ill-health or pecuniary inability of a claimant of a water privilege will dispense with the necessity of actual appropriation within a reasonable time, or the diligence which is usually required in the prosecution of the work necessary for the purpose.   We find no recognition of such doctrine in the law.   Nor are we disposed to adopt it as the rule to govern cases of this kind.   There is nothing, therefore, in the voluminous record brought before us which in any wise tends to excuse the inactivity and want of effort displayed during the two years and a half we have referred to.   Nothing to show that the work of enlarging the ditch could not have been systematically prosecuted during the greater part of every year, or that there was any difficulty in getting laborers.

We conclude, therefore, that Rose and his associates did not prosecute the work upon their ditch with that diligence which the law required, and so their right to any quantity of water, beyond what could be taken through the old ditch, is subordinate and subject to the rights of the plaintiff.

It is, however, contended that the verdict of the jury upon this point is conclusive.   And as it found that the work was prosecuted with due diligence, the Court, it is argued, must be controlled by that finding.   The general power of an appellate Court to set aside the verdict of a jury when it is not warranted by the evidence is not, we presume, denied by respondents, but it is argued no such verdict should be disturbed when no other objection is made to it, if upon any rational·view of the evidence it can be supported.   To this qualification we heartily assent, believing it to be the correct rule, and one founded upon most excellent reason.   The jury and Judge at *nisi prius* generally have better means of arriving at correct conclusions upon matters of fact than the appellate Court has. They have the opportunity of observing the general bearing of the witnesses and the manner in which they testify, and are better able to determine what degree of weight should be given to the testimony of each particular witness than the appellate Court.   So, too, evidence is sometimes of a character which cannot well be presented in a record, or at best but imperfectly.   It behooves the appellate Court, in view of the disadvantages which it must necessarily labor under in passing upon the weight of testimony, to give great consideration to the verdict of the jury upon it, and this the Courts are generally disposed to do.   (See cases referred to in *The State* v. *The Yellow Jacket Company*, recently decided.)

If, therefore, there be any evidence of a substantial character to support the verdict, the better opinion, we think, is that it should not be disturbed, simply because the weight of evidence appears to be against it.   However, if there be no substantial evidence upon the side of the verdict, it is the undoubted duty of the appellate Court to set it aside.   In our opinion the record in this case presents just such a case.

The testimony on behalf of the defendants, without any weight being given to that of the plaintiff, not only fails to show that their

grantors prosecuted the work on their ditch with reasonable diligence, but on the contrary shows affirmatively that they did not. There is no dispute whatever as to the amount of work done during the time to which we have referred.  Indeed, the testimony of the defendants' grantors is accepted as correct in that respect.  It must be conceded that in the ordinary course of things work of the character required could have been carried on during the greater part of every year.  But by the defendants' own evidence it is shown that for one entire year nothing of any consequence was done, and for a period of two years and a half the work on this great project was carried on only for about three months, and no excuse which can be recognized by the law is offered for this inactivity.  These are facts which are not denied by the defendants.  Such being the case, it is only necessary for this Court to decide whether these undisputed facts show that diligence on the part of the grantors of the defendants in the prosecution of the work on this old ditch which the law required of them.

There is no evidence to weigh.  Nothing to be done but to decide whether all that is claimed to have been done by the grantor of defendants meets the requirements of the law.  If it is perfectly apparent that it does not, why should not the verdict of the jury finding otherwise be set aside, as a verdict in any other case which is totally unsupported by the evidence ?  We see no reason why the verdict of a jury should be any more conclusive upon the question of due diligence than it is upon any other fact.  Due diligence is sufficiently clearly defined to enable the Courts to determine whether any given state of facts is sufficient to constitute it or not.  Whether it has been shown or not is certainly not a matter to be finally determined by the arbitrary assumption or conclusion of a jury in every particular case.  If so, and the Courts have nothing definite and fixed by which the correctness of such assumption or conclusion may be tested, then the verdict of a jury upon the question of diligence must in every case be absolutely final, even if it involved an evident and bald absurdity.  If they found due diligence to have been exercised when absolutely nothing was done, or that it was not exercised when everything possible was done, litigants could not be relieved from such a finding.  But as we have already stated, we

think a verdict upon the question of diligence may, like the verdict upon any other question, be set aside if unsupported or unwarranted by the evidence. The undisputed evidence in this case shows an utter want of diligence on the side of the defendants. The finding to the contrary must therefore be set aside.

The equitable relief sought in this case is ancillary to and entirely dependent upon the legal issues. A final injunction should not be granted until it is determined that the defendants diverted more water than they had a right to, and that by reason of such diversion the plaintiff was deprived of the quantity to which it was entitled. These are facts, however, to determine which the parties have a right to claim a jury. As it was necessary under the old practice to have the title or legal right settled by the law Court before an injunction would issue, so here, although the entire relief, legal and equitable, is sought in one action, still the parties have the right to claim a jury to determine all the legal issues, and an injunction can only be granted when the verdict of the jury is in his favor who claims such equitable relief. As there are issues involved in this case which must be passed upon by a jury before the final injunction can properly issue, we cannot direct the Court below to issue such injunction, but must order a new trial.

It is so ordered.

WHITMAN, J., did not participate in the foregoing decision.