Messrs. HUDSON and SLAYMAKER and Messrs. C. M. FRAZIER and M. B. CARPENTER, for appellants — *ex parte.*

*Per Curiam:* There is some conflict in the evidence as to the exact date when the partnership of appellants was formed. But the cause was tried to a jury, and we will not disturb their finding upon this question, which was submitted to and considered by them.

The answer avers a tender of $31.40, and admits an indebtedness to plaintiffs of that amount, yet the jury return a verdict for only $20.40, and the court rendered judgment therefor. No question is made as to the sufficiency of the tender, and we think, under the verdict, plaintiffs ought not to recover their costs.

Although the evidence may have convinced the jury that plaintiffs' just demand did not exceed the sum named in their verdict, yet defendant was and is bound by the admission in his answer. Plaintiffs were, in any event, entitled, under the pleadings, to recover $31.40, and the court should have rendered judgment for that amount.

The judgment will be reversed and cause remanded, with directions to the district court to render judgment for the sum above named.

The costs of the appeal will be equally divided between the parties; the balance of costs will be taxed against appellants.

*Reversed.*

SIEBER ET AL. V. FRINK ET AL.

1. It is not error to permit an answer to be filed after the statutory period for answering has expired — no default having been entered. *Quære*, whether the code renders it necessary in such case to obtain leave of the court to file answer.

2. In purely equitable cases, the trial must be to the court, unless both parties consent to a trial by a jury. Neither the chapter on references, nor any other provision of the code, operates to deprive the

court of the right, in such cases, to direct, upon its own motion, the taking and reporting of the evidence by a referee. The trial may be upon proofs thus taken, or upon testimony given in open court.

3. The pronouncing of judgment is a judicial act; the entry of record thereof is a ministerial duty. The judgment is complete when properly declared, though the mechanical act of recording the same has not been performed. It is not essential that this be done in term time.

4. Where a cause is tried to the court upon proofs taken by a referee or master, it is the duty of the supreme court to sift and weigh all the evidence, with a view to a just determination, uninfluenced by the proposition that the court below had superior facilities to judge of the credibility of witnesses, and the judgment will be reversed if not supported by the weight of evidence.

5. If the construction of a ditch be prosecuted with reasonable diligence, the right to water therethrough relates back to the commencement thereof.

6. A failure to use water is competent evidence of an abandonment of the right thereto; and if continued for an unreasonable period, it creates a presumption of an intention to abandon; but this presumption is not conclusive and may be overcome by other satisfactory proofs.

7. A change of the point of diversion on the same stream does not affect the priority acquired by the original appropriation, provided the quantity of water diverted remains the same, and no intervening appropriator is injured.

8. To acquire a right to water from the date of diversion one must, within a reasonable time, employ the same in the business for which it was taken.

## Appeal from District Court of Custer County.

THE facts are stated in the opinion.

Messrs. BLACKBURN and DALE, for appellants.

Mr. A. J. RISING, for appellees.

HELM, J.    There was no error in allowing the answer to be filed.    No default had been entered after the statutory period for answering expired, and it is doubtful if leave of court even was necessary, unless § 75 of the code may be construed as requiring such leave [§ 78, Code of 1883]; for it is said that the office of a default is "to

limit the time during which the defendant may file his answer," and that "if plaintiff fail to take a default before trial it is a favor to the defendant." *Drake v. Davenick*, 45 Cal. 463; *Manville v. Parks, ante,* p. 128.

Certainly when, as in this case, application is made, and leave granted, upon terms, by order of court, no default having been entered, there is no irregularity upon which we would reverse the judgment.

This is purely a chancery case; equitable questions only are presented and equitable relief alone demanded. The cause must be tried by the court unless both parties consent to a trial by jury; the court, of course, possessing the right to submit certain issues of fact, had they existed, to a jury or referee. § 14, p. 222, Sess. Laws 1879 [§ 154, Code of 1883].

The court in this action submitted no issue to the referee, and the referee assumed no judicial function; he determined no question and reported no finding; he only performed the ministerial duty of reducing the testimony to writing, and returning the same to the chancellor, who then heard the arguments of counsel and tried the case upon pleadings and the evidence so reported. We think that such cases may be tried upon proofs taken in this way, or upon oral testimony given in open court. We do not understand the chapter on references, or any other provision of the code, as operating to deprive the court, under the statute above cited, of the power, in cases like this, to direct upon its own motion the taking and reporting of evidence in the manner adopted herein; a power which was so fully conceded and so freely exercised before that instrument became a law. The case of *Williams v. Benton,* 24 Cal. 424, is not analogous; the reference there was to hear the evidence and decide the issue; the opinion considers the compulsory power of the court to authorize a *finding and judgment* by the referee. Besides, when that opinion was written, the California practice acts contained no such provision as

§ 14 above mentioned, a statute which had an important bearing upon this and several other questions connected with the distinction between procedure at law and in equity.

Counsel for plaintiffs in error express a desire to have this court review the case upon its merits, and "determine the rights of the parties so that the proper decree may be made below." And under the fourteenth and fifteenth assignments of error the argument and answer discusses but one proposition, viz.: the validity of a judgment *entered* in vacation. The question, therefore, which we shall consider under these assignments is whether a judgment regularly rendered by a court in the transaction of its judicial business may be entered of record in vacation.

In *Stearns v. Aguirre*, 7 Cal. 443, cited, the clerk attempted to enter a judgment in vacation, when it was neither rendered by a court, nor pronounced by law. Such a judgment is of course void; it is an attempt by a mere ministerial officer to perform judicial duties. The case is not in point upon the question above stated. The pronouncing of judgment is a judicial act; the entry of record thereof is a ministerial duty. The judgment is complete when properly declared, though the mechanical act of recording the same has not been performed. In jury trials our code directs the clerk to discharge this duty within a specified time after verdict, but if he fails or neglects to do so within the statutory period, the judgment itself, being pronounced on the verdict, is none the less valid, and may still be recorded; the code does not require the entry to be made in term time. And in no event does the provision limiting the time apply to trials by the court. The practice of entering judgments in vacation prevailed at common law. Freeman on Judgments (3d ed.), § 38 *et seq.* See, also, § 144 of our Code of Procedure.

The remaining assignments of error question the suffi-

ciency of the evidence to support the decree. Upon the principles of law governing the rights of the parties, counsel for both sides are in perfect harmony, a circumstance which is especially gratifying, as the court has no fault to find with the legal doctrines thus agreed upon. The case was tried in the district court mainly upon proofs taken and reported by a master or referee; it is, therefore, our duty to "sift and weigh all the evidence with a view to a just determination, uninfluenced by the proposition that the court below had superior facilities to judge of the credibility of witnesses." *Miller et al. v. Taylor et al.* 6 Col. 45.

The record contains over seven hundred and fifty folios of evidence, and we cannot analyze the same in this opinion; we shall content ourselves with a statement of the material conclusions of fact to be drawn therefrom.

Plaintiffs aver priority of right to the water in controversy through what is known as the "Wilson & Brown ditch;" defendants base their claim thereto upon alleged appropriations thereof by means of the "Old or Becker" and the "Edward P. Smith ditches." A fourth, called the "School Section ditch," is described in the testimony, and will command our attention. The Wilson & Brown ditch was constructed for the purpose of irrigating two tracts of land owned by Wilson and Brown, respectively. Plaintiff Wheeler is the grantee of Wilson, and plaintiffs Sieber and Hudson hold title under a conveyance from Brown.

The priority of appropriation through the Becker ditch proper is practically conceded, though a suggestion of abandonment is made; it is probably the oldest connecting with Antelope creek. We do not understand that plaintiffs complain of this appropriation of water; their contention is that defendants cannot use this priority to sustain their right to water through the School Section ditch.

We think plaintiffs are right in this respect. The head

of the former is on Antelope creek; that of the latter is on Cottonwood, a tributary of Antelope; both being above the confluence of the two streams. The latter was constructed in 1875, yet water was diverted from Antelope creek through the former as late as 1878; from the evidence and maps, we conclude that the former extends in a westerly, and the latter in a northerly, direction; they meet and unite, and the water from both may be used in irrigating the same tract of land. But there are two separate and distinct diversions and appropriations of water, dating at different periods, and the rights acquired attach upon the respective dates of appropriation.

There is some conflict of testimony as to the time of appropriation through the Wilson & Brown ditch; we are satisfied that the ditch was commenced as early as April or May, 1871, and that it was completed and water turned in by or before the 1st of August. The appropriation would, therefore, date from April or May of that year. We accept the rule adopted in California and Nevada in this connection. This rule is stated as follows: "Although the appropriation is not deemed complete until the actual diversion or use of the water, still if such work be prosecuted with reasonable diligence, the right relates to the time when the first step was taken to secure it." *Ophir M. Co. v. Carpenter*, 4 Nev. 544; *Kelly v. Natoma W. Co.* 6 Nev. 109.

Water was not appropriated through the Smith ditch until July or August of 1871.

If, therefore, there has been no abandonment of the right acquired by means of the Wilson & Brown ditch, the prior right of plaintiffs over the appropriations through the School Section and Smith ditches is established.

Upon the question of abandonment the testimony is by no means clear. From 1871 to 1875, according to the proofs, each of the three ditches constructed in 1870 and

1871 was neglected, and probably used but little during one or more of the seasons; but we cannot say that the evidence sufficiently establishes an intention to abandon either of them, or the right to water acquired thereby.

A failure to use for a time is competent evidence on the question of abandonment; and if such non-user be continued for an unreasonable period, it may fairly create a presumption of intention to abandon; but this presumption is not conclusive, and may be overcome by other satisfactory proofs.

The removal in 1876 of the head of plaintiffs' ditch and change of the point of diversion some eighty feet does not affect their right of priority. Both points of appropriation were upon the same stream; no change was made in the quantity of water diverted, and no one was injured by the removal; the use and the points of application to such use remained the same.

But it appears from the evidence of Wilson himself that prior to 1876 no part of the water appropriated through the Wilson & Brown ditch was used upon any portion of the Wilson tract. Of the quantity applied to the irrigation of the Brown ranch we are not satisfactorily advised. There is some proof that water "ran to waste" at the end of the ditch; and it may be that in 1871 and during the succeeding four years, but a part of the water diverted was actually applied to a beneficial use upon the Brown land. If this be the fact, plaintiffs are only entitled to priority for the quantity so used.

One of the essential elements of a valid appropriation of water is the application thereof to some useful industry. To acquire a right to water from the date of the diversion thereof, one must within a reasonable time employ the same in the business for which the appropriation is made. What shall constitute such reasonable time is a question of fact depending upon the circumstances connected with each particular case.

Plaintiffs Sieber and Hudson are entitled to a decree of

priority, and an injunction protecting the same, for so much of the water appropriated through the Wilson & Brown ditch as was used previous to 1876 in irrigating portions of the Brown ranch, of which they are the purchasers. But to determine this quantity further proofs must be taken.

It appears that in the summer of 1876 the appropriation of water from the Cottonwood by the School Section ditch was enlarged. Such increase is subject to the right of plaintiff Wheeler, as well as Sieber and Hudson, acquired in the early spring of that year by the reconstruction of their ditch and diversion therethrough. But we have no definite means of determining this quantity from the record; further testimony upon this point is also essential.

The decree will be reversed, and the cause remanded, with instructions to the district court to take the necessary proofs upon the two questions above mentioned, and enter a decree in accordance with the views herein expressed.

The costs of the entire litigation will be equally divided between the plaintiffs and defendants.

<em>Reversed.</em>