Reed, J.,
delivered the opinion of the court.
This is an appeal from the decision of the district court establishing priorities to water of different irrigating canals taking water from the Arkansas river.
The controversy arose between the canals, respectively, of the parties to this suit on appeal. It appears that the proceeding was under the statute, embracing a large number of ditches. The testimony was taken before a referee, which, with his finding of facts, was filed in court.
It was found by the referee that the date of appropriation of water by appellant was April 10,1889; that appellee made its appropriation of water January 6, 1890; that appellant’s number as to priority was 50 ; that of appellee 52. To which report exceptions were taken by appellee. On hearing, the finding of the referee was reversed. The date of appellee’s appropriation was fixed as by the referee, while that of appellant was fixed as of June 9, 1890, and Rocky Ford canal was given priority number 60, and appellant’s canal number 52.
It is claimed that the decree is erroneous.
The initial points or headgates of the respective canals at the Arkansas river are practically the same, or within short distances of each other, both being near the junction of Boone creek with the Arkansas river, in Pueblo county, the canal of appellant taken out on the north side of the river, running in a general northeasterly direction, length about 70 miles— the canal of the appellee taken out on the south side of the *547 river, running in a general southeasterly course — length about 80 miles.
As to the dates at which appellee’s company was organized, made its appropriation of water, commenced actual construction, and the time of the completion of its canal, there is no controversy whatever, the facts appear to be conceded. The questions presented are those in regard to the appellant.
As established by the evidence the facts appear to be :
Some time in the year 1889 certain parties became incorporated as The Colorado Land & Canal Company, and on the second day of July of that year filed the statement required by law and plat, by which it declared its intention to construct a canal for irrigating purposes, taking water from the Arkansas river at or near the junction of Boone creek with the river.
By the plat filed, of which it is said in the certificate: “ Hereby declares that the said plat accurately shows the proposed line of the said caual and the subdivisions of land through which it passes,” it is shown that from the initial point of the canal as located, to Jones’ point, a distance of 23 or 24 miles, the land was barren and non-irrigable; from that point on its course, northeasterly, was good, arable land to be covered by the canal.
Prior to the 28th day of December, 1889, The Colorado Land & Canal Company had expended, as shown by the evidence, the gross sum of about $3,471, of which sum about $2,650 had been spent in field work, preliminary surveys, platting, office work and incidental expenses, and after location and platting, the sum of about $780 was spent in grading or construction on the line. On the 28th day of December, 1889, The Colorado Land & Canal Companj- entered into an executory contract or memorandum in writing with one T. C. Henry, by which it agreed for the sum of $10,000 to be by him paid, on certain contingencies at some indefinite subsequent time, to convey or transfer to him all of its capital stock, and contained a stipulation that no title should pass until the payment of the $10,000, and delivered to the said *548 T. C."Henry the plat, field notes and data of its proposed canal, and allowed the said Henry to take possession of its proposed line of canal as surveyed and staked. Thereupon, The Colorado Land & Canal Company withdrew from its possession, stopped all operations in the way of construction, and abandoned and surrendered the same to Henry.
On April 21, 1890, a deed was made by the Canal Company to Mr. Henry in accordance with the contract, the deed was not delivered, the papers were placed in escrow and were to be void and inoperative if Henry failed to comply with his contract. He made failure, and at some subsequent time the deed was delivered to the grantor and canceled.
The Colorado Land & Water Company (appellant) entered upon the line of canal as platted by the Canal Company, but, as shown by the evidence, not for the purpose of construction upon the line as designated and platted, and only using the surveyed line as the basis or as data from which it could locate another line more satisfactory to itself. Taking Jones’ Point as the initial or base, a point to the north of the original line some ten chains distant was taken —such point being about six feet higher than the original line. From such point the survey was made westerly at a greater elevation, to connect such point with a point for the reception of water at the Arkansas river. This new alignment and greater elevation carried the head of the ditch some three quarters of a mile above the junction of Boone creek with the Arkansas river — the proposed initial point as established byr the Canal Company. A survey of the proposed canal to be constructed by The Colorado Land & Water Company was also made from Jones’ Point northerly and easterly. While from Jones’ Point to the river the two lines as established were of necessity nearly parallel and but short distances apart, after entering upon the irrigable land from Jones’ Point the two lines were in no manner identical or parallel, the line of The Colorado Land & Water Company (upon which the canal was subsequently constructed) diverging rapidily to the north from the location of the Canal *549 Company, and in its course and alignment northeasterly continuing to diverge to the north, until at points near the terminus of the survey and plat of the Canal Company it was several miles north of that line. The line as surveyed by the Canal Company ended near the center, east and west, of Otero county; the line of canal of the Water Company, as constructed, was continued far to the north and east through the northern part of Kiowa county to near the eastern line of such county.
It is established by the evidence and conceded, that after the filing of its plat by The Colorado Land & Water Company, the work of construction upon its line was entered upon and vigorously prosecuted. The canal is 70^ miles in length, 55 of which was completed in October and November 1890, and the balance — 151 miles in July, 1891. Water was first turned in on the 29th day of August, 1890.
The appellant became incorporated January 18, 1890. It will be observed that the contract between the Canal Company and Mr. Henry was made before the incorporation of the Water Company- — -it bears date December 28, 1889. On •the 24-th of October 1891, some fifteen months after the completion of the greater portion of its canal and the appropriation of water under its charter, the Water Company by a new contract of purchase, secured from the Canal Companj'- a deed of the supposed rights of the Canal Company.
The principal contention is, that by reason of Mr Henry’s transactions with the Canal Compaty and its subsequent purchase it succeeded to its rights, and as such successor its priority to the water should be carried back to the inception of the supposed rights of the Canal Company, and thus antedate the appropriation made by the appellee ; consequently, that the court erred in finding the date of its incorporation and the filing of. the necessaiy certificates as the inception of its acquired rights.
The two important questions for determination are :
First.- — -What, if any, rights had the Canal Company acquired by its incipient steps ?
*550 Second. — Did the Water Company succeed to such rights ?
Mr. Henry may have contemplated the formation of a company to construct a canal as afterwards constructed by the company that was formed, and, finding the ground occupied by the Canal Company, entered upon the negotiation to remove the obstruction, resulting in the memorandum of agreement executed December 28, 1889, but at that time and for several months after, until June of the ensuing year, appellant’s corporation had no existence. The agreement with Mr. Henry was followed by the deed to him, as grantee of the Canal Company, executed April 21,1890, but such deed was not delivered and was subject to defeasance on the failure of Mr. Henry to pay at a specified time. Such failure occurred, the deed was canceled, the date of the cancellation occurring in December, 1890, or January, 1891. No assignment or transfer of any kind was made by Mr. Henry to the company after its organization. By the failure of Mr. Henry to perform, the contract lapsed, and the Canal Company was fully reinstated in all its former rights so far as Mr. Henry and his company were concerned. The intention of Mr. Henry to create a company and give to it ultimately any benefits that he individually had secured from the Canal Company could not, even if the conveyance had become operative, invest the Water Company with any property or rights acquired by Henry — they 'could only pass by conveyance. There was no privity between the Canal Company and the Water Company; Henry having failed to complete his xsurchase, nothing passed from the Canal Company to either Henry or his company. These propositions need no authorities for their support. The right to priority through the Canal Company, therefore, cannot be based ux>on any contract or conveyance through Mr. Henry, but must, if it have any basis, rest upon the delivery to Mr. Henry of the map of its survey, the delivery of the possession of the line and the abandonment of the work of construction. The delivery of the plat invested the Water Company with no property ; the abandoning of the enterprise and work of construe *551 tion by the Canal Company could not inure to the benefit of the Water Company, for if it resulted in the forfeiture of its initial rights it would revert to the state, not to another corporation. It would again become the property of the state, subject to appropriation by the first comer complying with the law.
It may be conceded that at any time, while prosecuting its work of construction with proper diligence, a corporation of this kind may sell and dispose of such rights as it may have, and a grantee succeed to them and take the benefit of any right secured by the grantor from the state or others, and thus become a legal successor; but, in order to be such, the grantee must succeed in the same right, and the prosecution must be substantially of the same enterprise. In other words, it must succeed to the charter rights of the grantor and prosecute the enterprise under the same franchise, and in accordance with the statement and certificate of its organization. No corporation acquiring independently from the state a franchise to construct a canal, and completing such enterprise in accordance with its own stipulations and declarations, can claim as successor of another corporation acting under a different franchise. The right of both is derived from the state- — -the same source; and the fact that two canals of different corporations are nearly parallel in their alignment, and their contemplated purpose the same, does not alter their relation. The water taken and applied by appellant was the water designated in its certificate. There was no pretense that it was the water of the Canal Company, for long after its appropriation and application of water by the Water Company the ownership of the right to water in the Canal Company was recognized and negotiations were being-carried on to acquire it, culminating in the conveyance as above stated; consequently we conclude that the Water Company took nothing from the Canal Company prior to the deed of October 24, 1891. See Sieber v. Frink, 7 Colo. 152.
At the date of the conveyance, had the Canal Company *552 any property or vested rights that the Water Company could acquire by a conveyance ?
Prior to July 8, 1889, surveys were made, a line adopted and platted, and on that date the certificate and plat were filed as required by law. By December 24th of the same year 1780 only had been expended in excavation and construction on its line, which was never utilized by the Water Company. On that date the executory agreement was made with Henry, and all work of construction was abandoned; and as appears by the evidence and acts of the company all intention to construct was abandoned. Probably relying upon the Henry contract of sale, no action was taken or work prosecuted. After the failure of Henry to perform his contract and the cancellation of the deed, the company was still holding its supposed rights for sale in the market, negotiations were still being carried on for a sale to appellant, and as late as June 23, 1891, negotiations were being carried on between the Canal Company and aj>pellee to sell to it. Finally, on October 24, 1891, the conveyance was made to appellant.
In the first six months of its coiporate existence only a trifling sum was spent in construction ; in the two years following nothing whatever was done toward construction.
In Sieber v. Frink, supra, it is said, “ One of the essential elements of a valid appropriation of water is the application thereof to some useful industry. To acquire a right to water from the date of the diversion thereof, one must within a reasonable time employ the same in the business for which the appropriation is made. What shall constitute such reasonable time-is a question of fact depending upon the circumstances connected with each particular case.” See also, Canal Co. v. Southworth, 13 Colo. 115.
In Platte W. Co. v. N. Col. Irr. Co., 12 Colo. 531, it was said, “ To constitute a legal appropriation the water must be applied within a reasonable time to some beneficial use, that is, the diversion ripens into a valid appropriation only when the water is utilized by the consumer.” See Canal Co. v. Southworth, supra.
*553 In Ophir M. Co. v. Carpenter, 4 Nev. 544, tlie court said, “ Although the appropriation is not deemed complete until the actual diversion or use of the water, still if such work be prosecuted with reasonable diligence the right relates to the time when the first step was taken to secure it.” Followed by Kelly v. Natonia W. Co., 6 Cal. 105. In this state see Sieber v. Frink, supra; Larimer Co. Res. Co. v. People, 8 Colo. 617; Wheeler v. N. Irr. Co., 10 Colo. 588. In subsequent decisions in this state the principles of law as stated in these cases have been followed and deemed controlling. It will readily be seen, to acquire property in water that can be the subject of conveyance, not only must there be the intention to take, manifested by the filing of the certificate, plat, etc., but such intention must be followed by actual diversion and application to the purpose intended within a reasonable time. Here there was no diversion, no application. It is unnecessary to determine in this case what a reasonable time for the construction of the contemplated canal would have been, as construction was absolutely abandoned without any evinced or declared intention of resuming. Hence the incipient right to take lapsed, and had reverted to the state long prior to the attempted conveyance, and the court was justified in finding that the Water Company took nothing by such conveyance, and that its appropriation and rights could not antedate its own organization.
It is shown that the work of construction of the Rocky Ford canal was commenced on January 6,1890; on March 22d the necessary certificates of the corporation were filed; work was continuously and vigorously prosecuted, water turned in in July, and canal completed in October. The company, by its completion of the canal and the application of the water, perfected its appropriation, which related back to its inception, and it had a legal right to assert its priority against any and all subsequent appropriates. It is immaterial for the purposes of this case whether the inception of its rights dated from the 6th of January, when work commenced, or March 22d, when its legal right to appropriate water by filing *554 certificates was established, and the question will not be determined. ■
The evidence conclusively shows that the rights of the appellee antedate those of appellant, and there was no error in the decree of the district court, and it must be affirmed.

Affirmed.