[Civ. No. 331.    Second Appellate District.—March 11, 1907.]

ELENA P. DE WOLFSKILL, Appellant, v. GEO. A. SMITH and DATUS E. MYERS, Respondents.

WATER RIGHTS—WATER FLOWING FROM WELLS ON ABANDONED OIL CLAIM—INEFFECTIVE DEED.—Where an oil mining claim has been abandoned by the owner, after sinking several wells thereon, without the discovery of oil, the abandoned claim reverts to its original status as part of the public domain; and a subsequent deed from the original owner, conveying all right in the land and in the wells and water therein and flowing therefrom, is ineffective to convey any interest in the land or water.

Id.—Appropriation of Water in Streams on Public Land—Origin Immaterial—Percolation.—Water flowing in a stream on public land, whether from a spring, or from abandoned wells situated thereon, is subject to appropriation under section 410 of the Civil Code. The fact that the stream may be owing to the percolation of water, whether caused naturally in a flowing spring or artifically in flowing wells bored in the ground, is immaterial. The stream in each case is equally the subject of appropriation.

Id.—Mode of Appropriation—Notice—Diligent Prosecution of Work —Relation to Notice—Hindrance by Settler.—Under the Civil Code, the posting of the notice of claim to the water does not alone constitute an appropriation, but within sixty days thereafter the construction of the means of diversion must be commenced and prosecuted diligently and uninterruptedly, and when completed the claimant's right to the use of the water relates to the time of posting the notice. But where the wells were capped by a subsequent settler on the land so as to hinder the completion of the work, said settler is in no condition to assert that the claimant had failed to prosecute the work with diligence and to become an active appropriator.

Id.—Priority of Right of Way Against Settlers.—Under the act of Congress of July 16, 1866, and the amendments thereto, the right of way for vested and accrued water rights and rights to ditches used in connection therewith are assured against subsequent settlers and homestead claimants.

Id.—Effect of Posting Notice—Vested Right.—By posting the notice of claim in a conspicuous place at each of the wells, before any settlement including the same, the claimant became vested with the right to use the stream of water flowing therefrom, together with the right to construct over and across the land the necessary ditches to convert and conduct the same to the place of intended use, as against any subsequent settlers whose claim included the same or any part thereof.

Id.—Sufficient Record of Notice—Acknowledgment not Required. Where the notice posted at each well was identical, it was only necessary to record one copy thereof, and no acknowledgment of the notice was necessary to insure its proper record. The purpose of recording is to furnish notice of claimant's rights to subsequent settlers upon the land, or subsequent appropriators of the water; and the record of a single copy of the notice is sufficient for that purpose.

Id.—Right of Way for Pipe-line.—The fact that one of the defendants, prior to plaintiff's appropriation of the stream of water, had taken steps to obtain a right of way for a pipe-line over the land, the boundaries of which proposed right of way included the land on which the wells were located, gave him no right as against plaintiff's appropriation of the stream of water flowing therefrom.

ID.—LIMIT OF VESTED WATER RIGHT—DEVELOPMENT OF ADDITIONAL
WELLS NOT INCLUDED.—The vested water right belonging to the
appropriator of the stream of water flowing from the existing wells,
as against subsequent claimants of the land, is limited to the right
to complete the construction of the ditch so as to divert such stream
to the point of intended use, and does not include the right to
enter upon the land for the purpose of developing water by boring
additional wells.

APPEAL from a judgment of the Superior Court of River-
side County.  J. S. Noyes, Judge.

The facts are stated in the opinion of the court.

Barstow & Variel, and Thomas T. Porteous, for Appellant.

John G. North, and O. P. Sanders, for Respondents.

SHAW, J.—Appeal from judgment in favor of defendants.
This action involves the right to water flowing from artesian
wells located upon government land.

It is based upon the following facts: Sometime during the
year 1900 an oil company commenced boring for oil in a
canyon in the southeast quarter of the northwest quarter of
section 4, township 3 south, range 2 west, S. B. M.  It con-
tinued the prosecution of its work until January, 1901, when,
after having bored three wells and found no oil or other
mineral substance, it abandoned the work.  At the time of
the commencement of said work, and up to October 20,
1902, the said land was unsurveyed land of the government,
and, except as to the time that said oil company was prose-
cuting said work, was unoccupied.  The three wells bored
are in line with the bed of the canyon, distant about five
hundred feet apart.  The lower well has since its comple-
tion by said oil company flowed five inches of water, measured
under a four-inch pressure; the second or middle well, three
inches under like measurement; and from the upper well no
water at all flows.  On the ninth day of October, 1902, and
after the oil company had abandoned all work upon the prem-
ises upon which said wells were located, it executed to the
plaintiff a deed whereby, for a valuable consideration, it pur-
ported to convey to said plaintiff all its right, title and in-
terest in and to said forty acres of land and said wells and

5 Cal. App.—12

the water therein and flowing therefrom. That thereafter, on October 13, 1902, plaintiff posted in a conspicuous place at each of said wells a notice of appropriation, as follows:

### "NOTICE OF APPROPRIATION OF WATER.

"Take notice that the undersigned claims fifteen hundred inches of water measured under a four-inch pressure flowing from and at the wells bored by the San Jacinto Oil Company on the land which would be the northwest quarter of section four, township three south, range two west, San Bernardino meridian, if said land were surveyed by the United States, and I intend to divert said water at the three several points where this notice is posted, to wit, at each of said wells bored by the San Jacinto Oil Co.

"I intend to use said water for domestic and irrigation purposes on the land which was known as the Rancho San Jacinto Nuevo and the Moreno, Lakeview and Alessandro Colonies and adjoining lands in the county of Riverside, state of California.

"I intend to divert said water by means of ditches of sufficient capacity to carry same, leading from each of said points.

"Dated the thirteenth day of October, 1902.

"ELENA P. de WOLFSKILL.

"Witness:

"DAVID G. WOLFSKILL."

That on October 16th following one copy of the above notice was filed for record in the office of the county recorder of Riverside county, but that neither of said notices or copy filed was ever acknowledged.

That on October 20, 1902, one of the defendants, George A. Smith, entered upon and took possession of the entire northwest quarter of said section as a homestead under the laws of the United States, and since said date Smith has been in possession of said premises and of the wells located thereon and the water flowing therefrom, and has fully complied with the provisions of the law relating to the acquisition of government land by settlers thereon for homesteads.

That on August 21, 1902, Datus E. Myers did, under and in accordance with a certain act of Congress, file in the proper United States land office certain documents, data and maps required by said act of Congress, whereby he located a right of way for a pipe-line one hundred feet in width and extend-

ing across and through said forty acres upon which said wells were located, and embracing within its boundary lines the land upon which all of said wells are located. That thereafter, on November 17, 1902, said Myers, under the act of Congress entitled, ''An Act for the relief of Thomas B. Valentine,'' selected said southeast quarter of said northwest quarter, and being the forty acres upon which said wells were located, and duly filed certificate of location ''E No. 20,'' for forty acres of land issued in accordance with said act, and said selection was allowed.

That plaintiff duly commenced the construction of the ditch required to convey the water sought to be appropriated to her land and prosecuted the work continuously until, at the instance of defendant Smith, she was enjoined from entering or working upon the northwest quarter of said section on which he had, on October 20, 1902, located his homestead.

That said defendant Smith capped the wells, fenced the land in and prevented plaintiff from doing any work on said premises, or taking or diverting any water therefrom, and claims the right so to do by virtue of this claim and occupancy of said premises as a homestead.

No issue as between defendants is involved, the sole question being the right of plaintiff as against both defendants. From a judgment in favor of defendants the plaintiff appeals.

Appellant bases her claim to the water, first, upon the deed of conveyance from the oil company; second, upon the notice of appropriation, duly followed (so far as not prevented by the acts of defendant Smith) by the statutory steps required for the actual appropriation of water subject to appropriation under the laws of this state. As against plaintiff, the defendant Myers claims the water by virtue, first, that the wells are located within the boundary lines of the right of way for the pipe-line which he located on August 21, 1902, which location was prior in date to either the alleged posting of notice of appropriation or purchase made by plaintiff; second, that his selection of the forty acres of land under the Valentine scrip entitles him to the flow of the wells as against plaintiff.

Smith's claim is by virtue of his being an actual occupant of the land under the homestead laws of the United States.

Plaintiff's claim to the wells or the water flowing therefrom, so far as such claim is based upon purchase and con-

veyance from the oil company which had bored the wells, cannot be sustained. The fact that these flowing wells resulted from a fruitless effort to discover oil gave the company no right, title or interest in the land or stream of water flowing thereon. The laws governing the location of placer claims apply with equal force to the location of oil claims. (*Miller* v. *Chrisman,* 140 Cal. 441, [98 Am. St. Rep. 63, 73 Pac. 1083, 74 Pac. 444].) The oil company had acquired no right, title or interest in the land or water which it could legally convey. No attempt had been made to comply with the laws applicable to the location of an oil claim. Its rights, if it had any, to the land, wells, or water flowing therefrom, terminated when it ceased work thereon and abandoned its efforts to discover oil. Admitting that actual occupation of the land accompanied by active work thereon, in the prosecution of its efforts to discover oil, entitled the company to possession, such right terminated upon a failure to discover oil, and when, prior to October 9th, it abandoned the enterprise. (*Weed* v. *Snook,* 144 Cal. 439, [77 Pac. 1023]; *Miller* v. *Chrisman, supra.*)

Where a miner abandons his claim, it reverts to its original status as part of the unoccupied public domain. A subsequent locator takes it with all shafts, tunnels and drifts, however extensive or costly. (20 Ency. of Law, p. 733.)

The same principle applies to an oil claim, and it follows that inasmuch as the San Jacinto Oil Company had prior to October 9, 1902, abandoned the premises upon which the wells, one flowing five inches and one flowing three inches, were located, the land reverted to its original status as a part of the public domain. It was, on October 13, 1902, the date of posting the notice of appropriation of the water, a part of the unoccupied government land. Was this water subject to appropriation? In our opinion it was. The law is well settled that water flowing from springs upon the public lands of the United States is subject to appropriation under section 1410 of the Civil Code, which provides that "The right to the use of running water flowing in a river or stream, or down a canyon or ravine, may be acquired by appropriation." (*Ely* v. *Ferguson,* 91 Cal. 187, [27 Pac. 587]; *De Necochea* v. *Curtis,* 80 Cal. 397, [20 Pac. 563, 22 Pac. 198]; *Strait* v. *Brown,* 16 Nev. 317, [40 Am. Rep. 497].)

The fact that the flow of the stream from the spring is caused by water percolating through the soil does not deprive it of the character which makes it subject to appropriation. ''Where percolating waters collect or are gathered in a stream running in a defined channel, no distinction exists between waters so running under the surface or upon the surface of land.'' (*Cross* v. *Kitts*, 69 Cal. 217, [58 Am. Rep. 558, 10 Pac. 409].) Water passing through the soil, not in a stream but by way of filtration, is not distinctive from the soil itself; the water forms one of its component parts. In this condition it is not the subject of appropriation. When, however, it gathers in sufficient volume, whether by percolation or otherwise, to form a running stream, it no longer partakes of the nature of the soil, but has become separate and distinct therefrom and constitutes a stream of flowing water subject to appropriation. The water in question here is the stream issuing from the wells, and it is immaterial for the purposes of this discussion whether this stream is supplied by water percolating and filtering through the earth or not; at all events, it has gathered into a stream. No distinction can be made between the water flowing from these artesian wells and that flowing from the springs. ''Water rising to the surface of the earth from below and either flowing away in the form of a small stream or standing as a pool or small lake,'' is the definition of a spring given by the Century Dictionary. This definition is equally applicable to an artesian well. The stream in either case may result from the gathering of water at some point, whether near or distant, which produces the stream, the flow of which is by natural causes forced to the surface. In the one case the aperture or opening through which it finds its way to the surface is the result of nature's forces; in the other, it is produced by artificial means; the fact that it is produced by boring a hole in the ground in no wise changes its character. In either case the water flows to the surface naturally. When a stream of unappropriated water flows from an artesian well, having its location upon unoccupied government land, it is the subject of appropriation to the same extent as the waters of a natural spring likewise located.

Posting the notice of claim to the water does not constitute an appropriation. The Civil Code, section 1416, provides that within sixty days the claimant must commence the con-

struction of the works in which he intends to divert the water and must prosecute the work diligently and uninterruptedly. And section 1418, Civil Code, provides that by a compliance with the rules contained in section 1416, the claimant's right to the use of the water relates back to the time the notice was posted. His right to the water depends upon his complying with the provisions of the law and making an actual appropriation of its use. The court finds that the claimant did commence the work within sixty days after posting the notice and prosecuted it continuously until enjoined therefrom at the instance of defendant Smith on December 10, 1902, after Smith had settled upon the land, and that Smith fenced the land and prevented her from constructing the ditch. Having capped the wells and enjoined appellant from entering upon the land to complete the ditch, by means of which she sought to divert the water to the place of intended use, respondents are in no position to assert that appellant has failed to prosecute the work with diligence and become an actual appropriator.

By act of Congress passed July 16, 1866, [14 Stats. at Large, 253], it is provided: "That whenever by priority of possession rights to the use of water for mining, agricultural, manufacturing, or other useful purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and the decisions of the courts, the possessors and owners of such vested rights shall be maintained and protected in the same, *and the right of way for the construction of ditches and canals for the purposes aforesaid is hereby acknowledged and confirmed.*" (U. S. Rev. Stats., sec. 2339, [U. S. Comp. Stats. 1901, p. 1437].)

Later this act was amended by a provision to the effect that all homesteads allowed should be subject to vested and accrued water rights and rights to ditches used in connection therewith.

By posting the notice appellant from that time became vested with the right to the use of the stream of water then flowing from these wells, together with the right to construct over and across the land the necessary ditches to divert and conduct the same to the place of intended use. Both Myers and Smith took the property subject to the rights of appellant to the stream of water then flowing thereon, together with the right, without interference, to construct the neces-

sary ditches for its diversion, which rights accrued and
became vested in her under the said acts of Congress and
the laws and decisions of this state. The language used in
*Taylor* v. *Abbott*, 103 Cal. 421, [37 Pac. 408], where it is
said that the above-quoted section ''does not confer the right
to enter upon lands in the possession of another for the pur-
pose of securing the water thereon, or of completing an at-
tempted diversion of water,'' is not applicable to this case,
for the reason that in that case no sufficient notice had been
posted, and therefore no right to the water had accrued or
become vested under the local laws and decisions of the courts.

The notice was posted in a conspicuous place at each well,
and the claim is for fifteen hundred inches of water ''flow-
ing from and at the wells.'' It appears that these wells are
in line with the bed of the canyon, and the lower one about
five hundred feet distant from the one next above, or middle
one, and that no water flows from the upper one. Under
these facts we regard the notice as a sufficient designation
of the point of diversion, as well as sufficient in substance
to meet the requirements of section 1415, Civil Code. Nor
was it necessary, the notices being identically the same, to
record more than one copy. The purpose of recording is
to furnish notice of claimant's rights to subsequent settlers
upon the land or appropriators of the water, and this ob-
ject was fully attained by recording one copy.

The fact that defendant Myers had, prior to the posting
of the notice of appropriation, taken steps to obtain a right
of way for a pipe-line over the land, the boundaries of which
proposed right of way included the land on which the wells
were located, gave him, as against appellant, no right to the
stream of water flowing therefrom.

It is finally urged in support of the judgment that the copy
of the notice recorded was not acknowledged, and therefore
not entitled to be recorded, and if recorded, did not constitute
constructive notice of appellant's claim to the water, or
impart any notice to defendants.

Section 1161 of the Civil Code provides that, ''before an
instrument can be recorded, unless it belongs to the class pro-
vided for in either sections 1159, 1160, 1202, or 1203, its ex-
ecution must be acknowledged.'' Copies of notices of ap-
propriation of water are not designated in the excepted
classes mentioned in said sections. The copy of such no-

tice required to be recorded by section 1415, Civil Code, is not, in our judgment, such an instrument the execution of which is required to be acknowledged as a condition of being recorded, within the meaning of section 1161 above quoted. "The word 'instrument,' as used in the codes, invariably means some written paper or instrument signed and delivered by one person to another, transferring the title to or giving a lien on property, or giving a right to a debt or duty." (*Hoag* v. *Howard,* 55 Cal. 564.) This language was used in holding that a writ of attachment was not an "instrument" within the meaning of the statute; but it is cited with approval in *Warnock* v. *Harlow,* 96 Cal. 298, [31 Am. St. Rep. 209, 31 Pac. 166], where it is held that a notice of *lis pendens* is not an instrument, yet provision is made for recording such notice of an action affecting the title to real estate. (Code Civ. Proc., sec. 409. And also in *Foorman* v. *Wallace,* 75 Cal. 555, [17 Pac. 680].)

Rapalje defines an acknowledgment to be: "The act of one by whom a deed has been executed, in declaring before a competent court or officer that it is his act and deed." Section 1415, Civil Code, does not require the notice which is posted, and which presumably is signed by the claimant, to be recorded, but a *copy* thereof, not necessarily signed by the party claiming the water. It may be made and filed by a stranger. Inasmuch as the copy of the notice is required to be recorded, and as this copy is not required to be made or filed by the claimant, it seems clear that the legislature did not contemplate that it should be acknowledged in order to be recorded.

The northerly or upper well supplies no stream of running water, and hence affords no water subject to appropriation. Nor do the facts entitle appellant to enter the land for the purpose of developing water by boring additional wells, but she has an accrued and vested right to prosecute her work under and in accordance with the provisions of section 1416 of the Civil Code in the construction of the necessary ditches to convey the stream of water flowing from the two southerly wells to the place of intended use, and do all things necessary to complete the actual appropriation of the stream of water, in accordance with the notice posted on October 13, 1902.

The judgment is reversed, and the trial court will render a judgment for appellant in accordance with the views herein expressed.

Allen, P. J., and Taggart, J., concurred.