425 P.2d 405

CARBON CANAL COMPANY, a corporation et al., Plaintiffs and Appellants,

v.

SANPETE WATER USERS ASSOCIATION, a corporation, and Wayne D. Criddle, State Engineer of the State of Utah, Defendants and Respondents.

PRICE RIVER WATER IMPROVEMENT DISTRICT et al., Plaintiffs and Appellants,

v.

SANPETE WATER USERS ASSOCIATION, a corporation, and Wayne D. Criddle, State Engineer of the State of Utah, Defendants and Respondents.

Nos. 10122, 10123.

Supreme Court of Utah.

March 16, 1967.

Luke Pappas, Price, Stanley Litizzette, Helper, E. J. Skeen, Salt Lake City, for appellants.

Nielsen, Conder & Hansen, Arthur H. Nielsen, Phil L. Hansen, Atty. Gen., Dallin W. Jensen, Asst. Atty. Gen., Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from two cases, consolidated for purpose of appeal. In the first, the trial court upheld the State Engineer's jurisdiction to entertain another application for extension of time to prove up a claim to appropriate water, while a previous extension of time granted by the court, that had retained jurisdiction during such extension period, was still pending and before such extension period had expired. This case raised the question of jurisdiction.

The second case attacked the State Engineer's jurisdiction to process the application for extension and also his granting of another extension. The contentions in this second case that 1) he had no jurisdiction to process the application, since the trial court still retained jurisdiction over the matter, and even so 2) the evidence did not show (a) the quality and quantum of activity to show due diligence in proving up or (b) any reasonable delay in attempting to do so.

We think the evidence presented in either or both of the cases, compels us to resolve the doubt in favor of due diligence in expeditious development of water, and not in favor of the delay reflected in the facts developed, most of which were inadmissible, having occurred after the extension had expired. In the light of this principle, we hold that the applicant proved neither the required diligence nor a reasonable excuse for delay by that high type of convincing evidence demanded in water development cases. We reverse both causes, therefore, and adjudge that Carbon's claim of October 11, 1937, has a priority over Sanpete's 1924 priority. Carbon, therefore, is now charged with burden of pursuing its claim by such high type of convincing evidence.

Part of the history of this protracted litigation is found in Carbon Canal Company v. Sanpete Water Users Association,[1] to which we refer the reader without repetition here.

There are a few facts not documented there, which may be reported here, interesting in this problem and its solution:

Carbon or its predecessors had a 1922 priority under application 8989(a). Sanpete's is under 9593, dated 1924,—subject of this rather peripatetic litigation that seems to have meandered more than the Price River. The 9593 application of Sanpete was rejected by the State Engineer, which

1. 10 Utah 2d 376, 353 P.2d 916 (1960).

provoked an appeal by Sanpete to the District Court. That appeal, for some reason or another, languished and almost suffered rigor mortis in the District Court for fifteen years until 1939, when the court revived it and reversed the State Engineer's decision. This established Sanpete's priority of 1924. In the meantime the Carbon interests had filed for an extension of their 8989(a) application, but because of some unexplained inadvertence, filed it nine days late, and therefore its priority promptly was changed from 1922 to 1937. As pointed out the court stirred thereafter and in 1939, two years later, knocked Carbon's 1937 priority out of the water, giving the folks across the mountain a priority dating thirteen years before Carbon's.

In the meantime, the natural flow of Price River had been used beneficially by Carbon and perhaps other interests. That decision is significant here, if only to buff Sanpete's claim that Carbon, by protesting the former's repeated applications for extensions, delayed its proving up on the water. To refute Sanpete's contention, Carbon well might say the fifteen-year reprieve given Sanpete by the court at the instance of Sanpete, not only frustrated Carbon's claims but pygmied its priority rights, —sort of ex post facto like. But for that belated court decision, the water of the Price River likely never would have been flowing in this court.

Since 1939 numerous Sanpete applications for extensions have been allowed up to the present case,—for over a quarter century. Sanpete's successful extensions for decades leaving but few years to go,[2] impel this court, in a conceded equity case,[3] to canvass the facts to determine if, in this arid state, where a drop of water is a drop of gold, one, by extension after extension, may equitably prevent beneficial use of water by others through procedural stagnation for about forty years. We think not, under the facts of this case, and that the claimants under 9593 have not sustained the burden of showing entitlement by that high degree of quantitative and qualitative proof necessary in cases having to do with such water rights.

Another fact: Sanpete having been able to file its application for another extension much sooner, either with the State Engineer or the court, or both, chose *not* to file anything in the pending court case, but elected to file an application *only* with the State Engineer,[4] on a Friday,— two days before the deadline of the court's extension over which the court at that time had retained jurisdiction. The next day, Saturday, the court was closed as was the case on Sunday, the following day. It is

---

2. Title 73–3–12, U.C.A.1953.
3. Title. 73–3–15, U.C.A.1953.

4. Title 73–3–12, U.C.A.1953.

quite obvious that this filing without notice to the Carbon interests, made it impossible for the latter to file any kind of a pleading or protest either with the State Engineer or the court prior to the extension deadline. It seems to us that one seeking equity should do it,—on secular days as well as on those set aside for repose, in order to permit the other side to exercise its prerogative anent confession or avoidance.

Sanpete's counsel suggests, arguendo, that the State Engineer and the District Court had *concurrent* jurisdiction over the matter of another extension. The question immediately is posed, therefore, as to why the applicant did not extend the same courtesy to the trial court, that then and there had complete jurisdiction over this matter, by filing a petition for extension with the latter. There seems to be no answer unless one espouses the fallacious idea that a statute, by asserting that an unelected administrative agency has authority to override the jurisdiction of the judiciary in an equity case which constitutionally is invested with it, which is superlunary. Unfortunately in this case the trial court subscribed to such a thesis. We don't,—and having exercised our jurisdiction in entertaining this appeal, we decide as we do.

It is no answer for the trial court to say in a memorandum opinion that if it decided otherwise it would "sound the death knell to Sanpete's project." There is nothing in the record to justify this conclusion. Even if there were, it would be no legal or equitable justification for lack of diligence or reasonable delay in going forward. The trial court itself had some doubt about the jurisdictional question here, conceded that this court had decided that the courts had plenary jurisdiction in a case like this, but concluded to discount it.

The so-called North Sanpete Water Conservation Project, according to the record, is a multi-million dollar undertaking designed to *conserve* the water to which Sanpete heretofore and now contends it has rights. It is not designed, necessarily, to create more water, but to prevent demonstrated leaks in present canals, and to improve distribution of water to a part of Sanpete County situate in the northwest area, designed for irrigation purposes.

Sanpete's application 9593 represents a small part of an undertaking of considerable magnitude. There is nothing to indicate that the project would fail without proving up on the application,—the potentialities of which application are conjectural because of testimony that there is not enough unappropriated water to satisfy the claim. This, because of the so-called Morse decree of 1902, and prior other commitments, to the effect that the waters of Gooseberry Creek already have been appropriated. The only real evidence proffered by applicant is to the effect that the project —the whole project, and not simply 9593—

was "feasible." Over many years, with hearings before various officials, there has been no firm commitment for using government funds to complete the project, and such non-committal has persisted through this litigation.

The record in this case indicates that the applicant relied almost entirely upon a hope that free governmental funds might be forthcoming,—and this was the real cause for the delay, and quite probably the cause for lack of diligence.

The jurisdictional question having been resolved, what about a) diligence and b) excuse for delay?

█ As to a) : There is little in this record to show diligence in going ahead in developing water under 9593, except for the payment of Sanpete County Water Conservancy District board members' salaries, secretarial expense, attorneys' fees, and mileage for a number of people going to hearings in Washington and Salt Lake. All of this to get free money to advance the interests *of the whole project,* not application 9593—which up to the time of this appeal resulted in no firm commitment for any funds, but only arguments pro forma and con. The balance sheet of the Conservancy District substantiates the foregoing. There is one bit of evidence, supported by a photograph, that 1050 cubic yards of earth were pushed aside for access to a hoped-for tunnel, not solely to convey undeveloped water under application 9593, but largely to seal leaks, conserve water to which Sanpete *already* had rights, and to improve irrigation ditches and facilities in Sanpete County, —not the Price River Drainage area. The bulldozer operation of 1050 cubic yards represents less than ten rail car loads, which any competent operator of a mechanical shovel could complete in a week or so. We are convinced that pushing aside such amount of earth satisfied the requirements of diligence in proving up on an application for extension of time to develop and appropriate water, after nearly half a century of delay of such proof.

█ Almost all of the record reflects that the 9593 applicant presented proof of efforts to prove up the claim *after* the extension deadline had expired, but that the trial court admitted such evidence "pro forma," over the vigorous and hundredwise objections of counsel,—all of which objections were well taken, on the ground of immateriality.[5] Counsel for the State Engineer pretty well conceded the merit of such objections.

So, this case is almost denuded of any admissible evidence of a) diligence or b) cause for delay.

█ The latter reason is unsupported since the whole record reflects only an at-

5. Maricopa Co. Municipal Water Conservation Dist. No. 1 v. Southwest Cotton Co., 39 Ariz. 65, 4 P.2d 360 (1931).

**12**

tempt to get money to do what the applicant is charged with doing himself. If an extension of time is based on hope for future handouts of money by a government agency to prove up a claim for water appropriation which the claimant himself is unable individually to finance, one could hold up indefinitely the development of water by saying I am trying to get someone else to finance something that I impliedly, at least, represented I could do myself. This concept, in our opinion, should not and does not represent the existing principles in equity or law. The authorities seem to confirm us in this conclusion. In Maricopa County Municipal Water Conservation Dist. No. 1 v. Southwest Cotton Corp., supra, footnote 5, it was said that "The time within which the appropriation must be completed varies according to circumstances, as what may be reasonable diligence in one case may be a great lack of diligence in another * * *. But the mere lack of means with which to prosecute the work is never ipso facto a sufficient excuse for delay. As was well stated in the case of Ophir Silver Mining Co. v. Carpenter, 4 Nev. 534, 97 Am.Dec. 550: 'It would be a most dangerous doctrine to hold that the ill-health or pecuniary inability of a claimant of a water privilege will dispense with the necessity of actual appropriation within a reasonable time, or the diligence which is usually required in the prosecution of the work necessary for the purpose.' * * * *Particularly is this true when the delay is due to the difficulty of financing a large project.'* "[6]

Kinney on Irrigation and Water Rights (2nd ed., vol. 2, sec. 737, p. 1271) says about the same thing: "The mere lack of means with which to prosecute the work is not a sufficient excuse for delay * * * The claimant's pecuniary condition is not an excuse; and though the doctrine may seem harsh, it is nevertheless right. The authorities all agree on this proposition and there is no conflict on this point * * * Hence the courts hold, and properly that this cannot be done."

In Carbon Canal Co. v. Sanpete Water Users Association, cited above, the three surviving members of this court thought, and still think the majority opinion meant what it said that, in upholding the lower court, "We are especially prone to this view because of the condition attached to this extension of time by the court that applicant must take *positive steps to avoid any further delay.*" This condition has not been met except repeatedly to seek free funds to accomplish what the applicant represented it individually would accomplish.

---

6. Rio Puerco Irr. Co. v. Jastro, 19 N.Mex. 149, 141 P. 874 (1914); Grant Realty Co. v. Ham, Yearsley & Ryrie, 96 Wash. 616, 165 P. 495. City and County of Denver v. North Colo. Water Cons. Dist., 130 Colo. 375, 276 P.2d 992 (1954), reported in Natural Resources, Am. Casebook Series, West Pub. Co. (1965), p. 135.

We have held this case for over two years with assurances that something could be worked out. The assurances have resulted not only in protraction in time but in this court's resolving the case out of deference to the litigants' wish to negotiate, —without success. No costs awarded.

CALLISTER and TUCKETT, JJ., concur.

CROCKETT, Chief Justice, concurs in the result.

CROFT, District Judge (concurring in the result).

I concur in the result whereby the priority of appellants' application No. 8989(a) over respondent's application No. 9593 is restored, but I dissent from the reasoning of the majority opinion in achieving that result. I do so because the majority opinion can be construed as holding that the district court, when called upon to review any decision of the State Engineer, can, by entering an order to the effect that it retains jurisdiction, indefinitely stay the State Engineer from further action in an appropriation matter, thereby placing the court in the role of administrator instead of a court of review. I do not believe that such was the legislative intent.

The majority opinion says that "we reverse both causes," and thereby achieves the result of restoring the old order of priorities. I think we should sustain the judgment of the trial court in Case No. 10122, and modify the judgment of the trial court in Case No. 10123 in the manner hereinafter set forth. By doing so, I think we would achieve the right result, do equity to the parties, and would maintain the integrity of legal precedent, prior decisions and statutory procedures.

Respondent's application No. 9593 was first filed in 1924 and since that time has benefitted by several extensions of time within which respondent was to file proof of appropriation of the water covered by the application. On August 10, 1959, the district court entered a decree affirming the decision of the State Engineer in granting respondent a further extension. This decree, affirmed by this court,[1] resulted in an extension to July 22, 1962. By this decree the district court also made an order to the effect that jurisdiction of the matter would be retained during the extension period. On July 20, 1962, respondent filed another request for a further extension of time. The request was filed with the State Engineer, and both causes now before this court arise out of that request. Appellants filed a protest to the request so filed.

After filing their protest with the State Engineer, but without waiting for a hearing on such protest, appellants commenced Case No. 10122 by filing an action in the

1. Carbon Canal Co. v. Sanpete Water Users Assn., 10 Utah 2d 376, 353 P.2d 916.

14

district court seeking a judgment declaring that application No. 9593 had lapsed for failure of respondent to file its request for extension with the district court instead of with the State Engineer. The appellants contended that since the district court had retained jurisdiction of the matter during the extension period ending July 22, 1962, the State Engineer had no further jurisdiction to act in the matter and thus could not receive the respondent's request for extension of July 20, 1962. The district court ruled otherwise and appellants appealed from the judgment so entered. This appeal is now before us for review as Case No. 10122.

While Case No. 10122 was pending in the district court, the State Engineer held a hearing on respondent's request for extension and appellants' protest thereto. The State Engineer decided the controversy in respondent's favor and granted respondent another extension of time to January 31, 1966, within which to file its proof of appropriation under its application No. 9593. Appellants then filed a second action in the district court for a plenary review[2] of that decision. In this second action appellants again challenged the jurisdiction of the State Engineer to grant the requested extension, and also asserted that in the proceedings before the State Engineer respondent had failed to make a proper showing of diligence or reasonable cause for delay as required by the statute.[3] Again the district court ruled otherwise and again appellants appealed from the judgment so entered. This second appeal is now before us for review as Case No. 10123.

Thus, both causes now before us evolve out of the jurisdictional controversy as to whether or not the State Engineer had jurisdiction to receive and grant respondent's request for extension of July 20, 1962. Appellants here contend, as they did below, that since the district court had retained jurisdiction "of the matter" by its decree of August 10, 1959, the jurisdiction of the State Engineer to act in the matter was wholly terminated and had no force or effect. The majority opinion sustains that contention. In doing so this court, by reversing both causes (and particularly No. 10122 which raises only the jurisdictional issue) thus now rules that the district court erred in determining that the State Engineer had jurisdiction to act in the matter. If such be the case, i. e., if the State Engineer had no jurisdiction to act because of the retention of jurisdiction by the district court, then that conclusion by this

2. Section 73-3-14, U.C.A.1953, authorizes such review by the district court. Any person aggrieved by a decision of the State Engineer may have it reviewed in a civil action.

3. Section 73-3-12, U.C.A.1953, as amended, provides that the State Engineer may grant extensions of time on proper showing of diligence or reasonable cause for delay.

court should be determinative of both causes. This because, as appellants themselves point out, respondent's application No. 9593 would have lapsed and died a statutory death, its priority as well as the application itself would have ended on July 22, 1962, and the issues of diligence and reasonable cause for delay should not, and need not, be considered. These issues reach us only in Case No. 10123, and then only if it be concluded that the State Engineer had jurisdiction to act. If he did have jurisdiction to act, his decision in granting respondent the further extension of January 31, 1966, is then open to review by the district court, and this court, in which case the district court considers the case de novo to determine whether the evidence establishes a proper showing of diligence or reasonable cause for delay to sustain the further extension of time.[4]

I believe this court should sustain the judgment of the court below in No. 10122 because I believe the district court cannot and should not alter the statutory procedures set down by the legislature for water appropriation.

Section 73-3-14 of our code provides for a plenary review in the district court in any case where a decision of the State Engineer is involved and any party is aggrieved by such decision. The Engineer's decision in granting an extension of time for proof of appropriation is such a case.

When such an action is filed, notice of the pendency of such action must be filed by the clerk of the district court with the State Engineer. The filing of such notice "operate[s] to stay all further proceedings *pending the decision of the district court.*" (Section 73-3-14.) Within ten days after entry of the decision thus rendered, a copy of the judgment must be transmitted by the clerk of the district court to the State Engineer (Section 73-3-15).

When the district court entered its decree of August 10, 1959, the net result of which was to extend the time to July 22, 1962, within which respondent had to make proof of appropriation, or to file another extension request, that court had made the decision it was called upon to make under the statute—namely, reviewing the decision of the State Engineer in granting respondent the extension of time. By its decision the court in that case did not merely give the respondent until July 22, 1962, to prove its appropriation, or to show diligence, or to show reasonable excuse for further delay. It fixed a definite date terminating the period for which the extension was granted. The court also directed the respondent to form a conservancy district with taxing authority, which it did, or to otherwise submit satisfactory evidence of its ability to proceed without the necessity of forming such taxing authority.

4. Sections 73-3-12, 14, U.C.A.1953.

· If it be said that when the court "retained jurisdiction," it deprived the State Engineer of any further jurisdiction in the matter, are we to assume that in such case any proof of appropriation, if made, must be thereafter made to the court? Section 73-3-12 states that "[a]ll requests for extension of time must be by affidavit and *must be filed in the office of the state engineer* on or before the date fixed for filing proof of appropriation," which proof, when filed, *must be filed with the State Engineer on blanks furnished by him.* (Section 73-3-16.)

In United States v. District Court of Fourth Judicial District, 121 Utah 1, 238 P.2d 1132, this court said:

The use of the terms "review" and "trial de novo" indicate that the court shall review only the issues of law and fact which were involved in the engineer's decision. That is, whether the application shall be approved or rejected, and as a corollary thereto whether on all the evidence adduced at such trial de novo the enginer's approval or rejection should be sustained, rejected or modified.

In Eardley v. Terry, 94 Utah 367, 77 P. 2d 362, this court also said:

When an appeal is taken from the decision of the state engineer in such a case, the trial court is required to determine the same questions de novo. It determines whether the application should be approved or rejected and does not fix the rights of the parties beyond the determination of that matter. The issues remain the same upon an appeal to this court. All that the district court or this court, on appeal from the district court, is called upon to do is to determine whether the application should be rejected or approved.

Under these decisions I do not read into our statutory procedures any power in the district court to take over the duties and functions of the State Engineer. Our statutes afford no authority for keeping an open end on extensions of time and the district court decree of August 10, 1959, did not do so. What the district court in that decree intended to do under its retained jurisdiction is by no means clear to me, but at most I would say the requirements of the decree do afford a more specific basis for determining, in future statutory proceedings, whether diligence has been used in effecting appropriation of water to a beneficial use.

The majority opinion takes respondent to task for filing its request of July 20, 1962, for a further extension "without notice to the Carbon interests" and suggests that this made it impossible for the latter to file any kind of a pleading or protest

with the State Engineer or the district court prior to the extension deadline. Such notice was neither required of an applicant nor fatal to action by the Carbon interests. Under the statute requests for extensions may be filed on the last date fixed for filing proof of appropriation.[5] Furthermore, the Carbon interests protested twice, once by filing suit to challenge the jurisdiction of the State Engineer to receive and act upon the request, which reaches us here as Case No. 10122, and once by filing suit to review the decision of the State Engineer in granting such extension, which reaches us here as Case No. 10123. We should rejoice that further opportunities for protest were not open to appellants.

As to Case No. 10123 and the issues of whether there has been a proper showing of diligence or reasonable cause for further delay to justify the latest extension by the State Engineer, I think, as already noted, that the judgment of the court below should be modified rather than reversed. The decree below protects the continued life of application No. 9593 and we should leave no doubt about doing so here. It appears to me that at least as of July 22, 1960,[6] it must be recognized that respondent's many extensions of time for filing proof of appropriation were, up to that time, based upon what was considered to be a proper showing of diligence or reasonable cause for delay. However, respondent's application No. 9593, which was for 15,000 acre feet of water in Gooseberry Creek for storage in a reservoir, was filed in 1924 and contemplated the construction of a dam and a tunnel to carry water into Sanpete County. Forty-two years later the record reflects: no dam, no tunnel, extension after extension, and years of litigation. We still lack any clear showing that there is unappropriated water in the proposed source; or that the proposed plan is physically and economically feasible; or that the applicant has the financial ability to complete the proposed works, as required under the statute.[7] Then too, I think the real import of Judge Jones' decree of August 10, 1959, was that the Sanpete Water Users Association should either fish or cut bait.

In United States v. District Court of Fourth Judicial District, supra, this court noted that under certain circumstances the State Engineer's approval of an application may be made "expressly subject to the rights under other applications which are filed later." Furthermore, Section 73–3–12 of our code provides in part as follows:

---

5. Section 73–3–12, U.C.A.1953, as amended.
6. The date of the remittitur by which the district court decree of August 10, 1953, was affirmed by this court.

7. Section 73–3–8, U.C.A.1953, as amended.

18

The state engineer, in acting upon requests for extension of time, may, if he finds unjustified delay or lack of diligence in prosecuting the works to completion, deny the same or may grant the request in full or in part or upon conditions, including a reduction of the priority of all or part of the application.

In water appropriation matters there is a statutory mandate that an applicant shall diligently prosecute to completion the construction of works and the application of water to beneficial use.[8]

Thus, I would modify the district court decree in Case No. 10123 and approve respondent's latest application for an extension of time "upon conditions"—those conditions being that respondent's priority be brought down to the 1939 date when the district court, after 15 years of delay, reversed the State Engineer and approved respondent's 1924 application. This would make it subsequent to the priority date of October 11, 1937, now held by appellants' application No. 8989(a), which I believe is an equitable and just result under all of the facts and circumstances. With the old priorities thus restored, perhaps it would not be too much to hope that new attitudes between the parties may now be established.

8. Section 73-3-12, U.C.A.1953, as amended.